**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ulana JAROSZENKO, Defendant–Appellant.**

**No. 95–3197.**

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1996.

Decided Aug. 6, 1996.

Rehearing Denied Aug. 29, 1996.

Barry Rand Elden, Chief of Appeals, (argued), Office of the United States Attorney,

Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Robert J. Palmer, May, Oberfell & Lorber, Marsha Foulks and Kristina Woolbright, Law Students (argued), South Bend, IN, for Defendant–Appellant.

Before BAUER, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

After Ulana Jaroszenko forged checks worth more than $300,000, she pleaded guilty to bank fraud charges. The district court accepted her plea and entered a judgment of conviction, sentencing her to a year in prison followed by five years of supervised release. It also ordered her to make full restitution. Although she does not contest her conviction, Jaroszenko does challenge several aspects of her sentencing, arguing that the entire sentencing hearing was undermined by the ineffective assistance of her counsel, that the district court misunderstood the extent of its discretion to determine her prison sentence and that the restitution order was improperly determined and executed. Finding errors in the district court's consideration of Jaroszenko's sentence, we vacate her sentence and remand the case.

### I.

Ulana Jaroszenko's criminality seems to have arisen from a series of family tragedies which began in late 1991. At that time, doctors determined that her elder sister suffered from a malignant brain tumor. Because her sister lacked adequate insurance, Jaroszenko assumed responsibility for paying her sister's costly medical bills. Shortly after learning about her sister's condition, Jaroszenko discovered that one of her daughters was afflicted with Bell's Palsy and that her other daughter required treatment from a heart specialist. The financial strains imposed by these problems led Jaroszenko to take desperate measures. As an executive assistant for Jerold Salzman, a Chicago attorney, she helped manage his personal finances and had access to blank checks for his bank accounts. Between January 1992 and May 1994, Jaroszenko forged at least 58 checks on Salzman's accounts, making them payable to herself, her husband and her creditors. During this time, she also took advantage of her position to conceal her forgery by destroying returned checks and by manipulating records of the accounts so that the deficiencies seemed to come from Salzman's quarterly tax payments or other expenses. When her theft ended, she had taken $324,000, not all of which went to her family's medical bills. Jaroszenko took rather elaborate steps to conceal her spending of the stolen money, so the complete story of its use is unknown. Nevertheless, the record before us suggests that she used at least a substantial portion of it for personal indulgence as well as for her family's necessities.

Eventually, Salzman discovered Jaroszenko's forgeries, and the government brought charges against her under 18 U.S.C. § 1344, which makes it a crime to fraudulently obtain money that is in the control of certain financial institutions. Jaroszenko pleaded guilty, and, even before her sentencing, she began making restitution to Salzman, giving him cash and other valuables worth $100,000. After considering the presentence report and Jaroszenko's motions and after conducting a sentencing hearing, the district court sentenced her to a year in prison and to five years of supervised release. He also ordered her to pay $224,000 in restitution. The payment was to begin immediately and be completed by the end of her period of supervised release.

### II.

Jaroszenko contends that the sentencing hearing was invalid because she was deprived of the effective assistance of counsel in violation of the Sixth Amendment. During the hearing, the judge noted that Salzman, his family and his firm were "good people" and "fine folks." Jaroszenko contends that these remarks indicated that the judge had special sympathy for those victims, which made it inappropriate for him to preside over her case. Because her trial counsel failed to respond to these remarks with an immediate motion for recusal, Jaroszenko believes that the entire sentencing process was constitutionally deficient. Although Jaroszenko did

not complain about her counsel to the district court, this is certainly not something we have required under pain of waiver. We have, however, previously held that claims of ineffective assistance should begin in the district court through a motion for a new trial or for collateral relief under 28 U.S.C. § 2255. But we can hear such claims when the issues that they raise are sufficiently clear cut and when the record before us forms an adequate basis for decision. *See United States v. Boyles*, 57 F.3d 535, 550 (7th Cir.1995). This case meets these conditions.

To reach a conclusion on this claim we must consider the context in which the judge made his remarks. At one point in the hearing, the government and Jaroszenko debated the application of the abuse-of-trust enhancement to Jaroszenko's guidelines score. As a preface to his decision about the enhancement, the judge suggested that "trust" came in varied forms and that the guidelines were concerned with a rather specific form of it. He followed this preface by saying:

> We can't live in life without trust. But to put people in jail for a position which we bear some of the responsibility for not being ourselves vigilant I don't think is included. I don't see—and I know the Salzmans, they're good people. I know the firm and they're fine folks. But you know, we all have an obligation to kind of watch our own tail even if we trust our secretaries, and secretaries are people we like to trust. But still it's a good idea every once in a while to make sure that everything is on the up and up. It's simply good accounting. It's good business practices. We have no real right not to watch our own books because we have obligation[s] to others ourselves, tax obligations and so forth.

The judge then decided not to enhance Jaroszenko's guidelines score for an abuse of trust, and Jaroszenko's trial counsel did not complain.

An attorney's performance in a criminal trial is ineffective if it is deficient and if the deficiency prejudices her client. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Performance is deficient when it falls below the standard set by a reasonably competent attorney. *Id.* at 687–88, 104 S.Ct. at 2064–65. We cannot conclude that Jaroszenko's trial counsel was ineffective here because we do not find that she performed deficiently in declining to move for recusal. There certainly are situations in which a competent attorney for a criminal defendant might want to recuse a judge who expressed warm feelings for victims of the defendant's crime. If a judge's sympathy for victims would incline the judge to view the defendant's conduct more harshly, a competent defense counsel might ask for a judge with an impartial eye. As the quotation above demonstrates, the judge's favorable impression of the victims here did not lead him to a more unfavorable impression of Jaroszenko's conduct. In a sense, his favorable impression of the Salzmans had the opposite effect. To determine the applicability of the abuse-of-trust enhancement, the judge had to determine whether Jaroszenko's job required the exercise of extensive discretion that she could abuse. *See* United States Sentencing Commission, Guidelines Manual § 3B1.3, cmt. 1 (1994). The judge's favorable comments about Mr. Salzman and his firm suggest that he thought that they were capable of managing their own affairs in a way that would not require them to grant discretion to employees in Jaroszenko's position. The judge thus expressed his favorable views of the victims as a means of explaining why Jaroszenko's conduct was not an abuse of trust. In short, the judge's remarks did not reflect a thought process infected with prejudice against the defendant that would lead to unfavorable rulings in the other aspects of sentencing. If anything, when considered in their entirety, they suggested that the judge was willing to give Jaroszenko the benefit of the doubt. They therefore did not present an occasion upon which a competent attorney would necessarily have moved for recusal.

### III.

Jaroszenko challenges her prison sentence on the ground that the district court based that sentence on an erroneous understanding of the extent of its discretion. After the judge made a preliminary determination of

Jaroszenko's guidelines score, he prepared a sentencing order that called for a one-year prison sentence, the shortest sentence in the range of sentences recommended by the guidelines. Jaroszenko then moved for a downward departure under 18 U.S.C. § 3553 and § 5K2.0 of the guidelines, both of which give the district courts discretion to impose lesser sentences than those that the guidelines recommend. During the sentencing hearing, the judge provided an explanation of his decision not to depart downward. We quote from that explanation at length.

> I don't particularly like the guidelines. I don't like the guidelines. When they came in to effect about seven or eight years ago, as a matter of fact, I ruled they weren't constitutional. The Supreme Court thought they knew more than I did, so they said that they were constitutional. I can't help it if they make a mistake every once in a while. But I am required to follow them in their assertions of the law. I find—but then I take a look at this case and I'm not sure what I would do with it even if there weren't guidelines.

> I suppose if one were as comfortable that there would be a hundred percent restitution, if the exigent circumstances were severe and heart tugging and so forth, that a judge under the old way who could take into consideration many, many factors that are not even within the law, all of which have been taken away from the courts by the Congress and the Congress as supported by the higher courts....

> . . .

> Many, many people in this world care about their families and they would help them where they could and sometimes they help them when it's against the law and they know it's against the law and they know they're going to be punished for it. Other people don't break the law to help their families even though they want to desperately. That's been the story of humankind. Jean Valjean stole bread to feed his family. We all ... decided that was Draconian punishment.

> I don't think this is for this crime. I think the crime included a very serious long term calculated abuse, and Ms. Jar-

oszenko is not stupid, she is intelligent and she knows her responsibilities. And the indication, the indicia of how the money has been used are very middle class, not poverty ridden. The home has got nice artifacts in there. The probation officer has visited. She has tried to make some restitution. She deserves downward departure on remorse, but I don't think she deserves downward departure on the law even if I were inclined to give her one, and so it's denied.

The judge then imposed the one-year prison sentence.

Jaroszenko and the government have different ideas about how this quotation reflects the reasoning behind the judge's sentencing decision. Focusing on his assertion that "she deserves a downward departure on remorse," Jaroszenko believes that the judge wanted to impose something less than a one-year prison sentence because she was remorseful; and she believes that the judge did not do so only because he erroneously concluded that the guidelines prevented him from considering remorse in his exercise of discretion. For its part, the government believes that the judge knew perfectly well how the guidelines did and did not limit his discretion. Indeed, the government points out that it reminded the district court about the extent of judicial discretion in sentencing. According to the government's interpretation, the judge's reference to Jaroszenko's remorsefulness can only be understood in terms of his preceding discussion of her culpability. The government believes that the judge was acknowledging the sincerity and depth of Jaroszenko's remorse and was pointing out that, in some circumstances, such remorse might justify a downward departure. But the government also believes that the judge concluded that such circumstances did not exist in this case because Jaroszenko's conduct was so culpable and was ultimately inexcusable.

■ We have limited jurisdiction to review a district court's decision about a downward departure. In this case, our conclusion about the nature of the judge's decision determines whether we have jurisdiction to review and the outcome of our review. If Jaroszenko is correct, the judge's decision was the product

of an erroneous legal conclusion about the effect of the guidelines on his discretion, and we do have jurisdiction to review such rulings. If, however, the government has more accurately interpreted his comments, his decision involved the permissible exercise of discretion which is beyond the scope of our review. *United States v. Larkins*, 83 F.3d 162, 168 (7th Cir.1996).

We conclude that the judge did think that he lacked the discretion to depart downward on account of Jaroszenko's remorse. This is the only conclusion that explains why he decided not to depart downward after having asserted that Jaroszenko "deserves a downward departure on remorse." To be sure, the judge was reminded about his discretion in general terms, but the reminders did not relate specifically to his discretion to consider remorse; and it appears that the judge believed that considerations of Jaroszenko's remorse could not affect his decision. Although the government's attempt to interpret this assertion is astute, accepting that interpretation would involve putting a rather improbable gloss on a clearly articulated idea. If we accept the government's interpretation, we would have to conclude that the judge meant the opposite of what he said— that he said that Jaroszenko "deserves a downward departure on remorse" when he meant that she did not. We see no reason not to take the judge's assertion at face value—as an expression of the idea that the law prohibited him from granting a downward departure for remorsefulness.

As defined in the statutes and in the guidelines, the law that controls a district court's discretion in sentencing does not impose this prohibition. A district court has the authority to impose sentences that are less severe than those that the guidelines recommend. *See* 18 U.S.C. § 3553; Guidelines Manual, § 5K2.0. In exercising this authority, a court may consider, without limitation, any information about the background, character and conduct of the defendant. *See* 18 U.S.C. § 3661; Guidelines Manual, § 1B1.4. To be sure, policy statements in the guidelines suggest that certain specific factors should not ordinarily affect a decision about a downward departure; but those policy statements also note that those factors can play a role in the exercise of discretion in unusual cases. Guidelines Manual, § 5K2.0. Although the guidelines may discourage the consideration of a defendant's remorse in most decisions about downward departures, they do not contain an absolute ban on a district court's indulging in such a consideration. Because the district court here seemed to believe that he was prevented from doing so, the determination of Jaroszenko's sentence should be revisited.

## IV.

Jaroszenko's final arguments pertain to the order of restitution imposed by the district court. At the sentencing hearing, Jaroszenko expressed a willingness to make full restitution even if it took the rest of her life. Perhaps relying on this willingness, the district court ordered her to make full restitution, which amounted to $224,000. He also ordered that payment should begin immediately and be complete by the end of her period of supervised release, but he noted that "[i]f the Probation Department wants to come to the court at that time and after evaluating the circumstances and make recommendations[,][t]he court will listen." Jaroszenko did not challenge this order during the sentencing hearing.

Jaroszenko now finds two errors in it. First she contends that the district court must have determined the amount of restitution and the time for paying it without considering her ability to pay, a consideration mandated by statute. Second she argues that the court effectively delegated authority to the probation department to determine a payment schedule.

Before imposing an order of restitution, a district court must consider the amount of the victim's loss, the defendant's financial resources and the financial needs and earning ability of the defendant and her dependents. 18 U.S.C. § 3664(a). When announcing the order, the court need not make formal findings or explain its consideration of these factors. *United States v. Ahmad*, 2 F.3d 245, 246 (7th Cir.1993). If the court does explain its order and expresses its dis-

regard of one of these factors, a defendant may, of course, successfully challenge the order. *United States v. Murphy*, 28 F.3d 38, 40 (7th Cir.1994). Even in the absence of a formal explanation, however, a defendant may prevail in her challenge to the order if she can show that it was not improbable that the district court failed to consider the mandatory factors. *Id.* If a defendant challenges the restitution order in the district court, we review the order for the abuse of discretion. If a defendant does not challenge the order below, we review for plain error. An error is plain when it is conspicuous and when it probably changed the outcome of the court's decision-making regarding the restitution order. *United States v. Gomer*, 764 F.2d 1221, 1222–25 (7th Cir.1985).

 We conclude that it is not improbable that the district court here failed to consider Jaroszenko's ability to pay in determining its restitution order. The record suggests that Jaroszenko does not now have the resources to repay $224,000; she has already liquidated a substantial portion of her assets (some undoubtedly ill-gotten) in repaying $100,000. Moreover, the record suggests that neither she nor her family members are likely to acquire such resources before the end of her period of supervised release. Her husband's income is not great, and, after her release, Jaroszenko is not likely to find a lucrative job. Her training and experience make her best qualified to be a secretary, but, given her criminal record, her immediate prospects in that field seem limited indeed. Although Jaroszenko may eventually make full restitution—voluntarily or under the force of a civil judgment—the record does not suggest that she can possibly do so within the time prescribed by the district court. When a restitution order seems impossible, as this one does, we will find plain error. *See United States v. Mahoney*, 859 F.2d 47, 50–51 (7th Cir.1988); *Gomer*, 764 F.2d at 1225.

 Our decision to vacate the restitution order makes it unnecessary for us to address Jaroszenko's contentions about the method of payment it established. In any event, we cannot see a problem with the method prescribed by the district court as we understand it. The district court required Jaroszenko to make immediate payment. Our cases have held that "immediate payment" does not mean "immediate payment in full;" rather it means "payment to the extent that the defendant can make it in good faith, beginning immediately." *See Ahmad*, 2 F.3d at 249. As we have previously noted, "if the defendant is not paying what he can the probation officer will ask the judge to revoke or alter the terms of release. Then the judge may make the order more specific [by prescribing a payment schedule] or, if the defendant has not paid what he could in good faith, may send him back to prison." *Id.* We see nothing in the district court's order that would have violated this procedure.

Jaroszenko's sentence is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.