**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marver Lin CARTER, Defendant–Appellant.**

No. 96–3860.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1997.

Decided Aug. 27, 1997.

Tina L. Nommay, Robert N. Trgovich (argued), Office of the United States Attorney, Fort Wayne, IN, for Plaintiff–Appellee.

Allan Caplan, Harlan Goulett (argued), Minneapolis, MN, for Defendant–Appellant.

Before BAUER, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

After Marver Carter and an accomplice were caught with cocaine in his car, Carter pleaded guilty to conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. The district court accepted his plea and began the process of calculating his sentence under the United States Sentencing Guidelines. Carter requested a downward departure for his strong family and community ties, U.S.S.G. § 5H1.6, stable work history and record of good works, U.S.S.G. § 5H1.5 & § 5H1.11, genuine remorse and immediate acceptance of responsibility for his crime, U.S.S.G. § 3E1.1, as well as for his substantial cooperation with law enforcement and prosecution, U.S.S.G. § 5K1.1. The district court denied his request and sentenced him to 168 months in

prison, the shortest sentence within the applicable guideline range. Carter appeals, contending that the district court applied the guidelines formalistically without considering the purposes of sentencing as they relate to his specific case and without considering his exceptional circumstances. He further argues that the district court erred in not requiring the government to seek a downward departure in return for his cooperation. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) & (2).[1] We affirm.

I.  Factual Background

On August 23, 1995, on their way from Tucson, Arizona to Fort Wayne, Indiana, Marver Carter and his passenger were stopped by Sergeant Ed Delmore of the Collinsville, Illinois police, for having no license plates. Sergeant Delmore questioned each separately and, after receiving contradictory explanations from the two about their travels, he told them the car would have to be towed. Sergeant Delmore then asked for and received permission to search the car. In a suitcase, Sergeant Delmore found what, from his experience, appeared to be a kilogram package of cocaine. He arrested Carter and his passenger. Continuing his search, Sergeant Delmore found what appeared to be four more kilograms of cocaine in the suitcase. A field test of one of the packages proved Sergeant Delmore correct. Both suspects were read their *Miranda* rights and they agreed to cooperate.

Carter placed a taped call to his buyer in Fort Wayne, Indiana. Drug Enforcement Agency agents then escorted Carter to Fort Wayne to meet his buyer at a motel. After the drug transaction took place, police arrested the buyer, Jiermal Walker, who also agreed to cooperate. This led to the arrest of another buyer, Shaft Jones. All four men were indicted on September 22, 1995. On

---

1. Although the government cites to several authorities to argue that we lack jurisdiction to review this case, we disagree. Contrary to the government's assertions, we review a district court's discretionary refusal to grant a downward departure under 18 U.S.C. § 3742(a)(1) when the defendant argues that the district court misconstrued the legal standards governing its authority to depart. *See United States v. Jones*, 55 F.3d 289, 292 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 161, 133 L.Ed.2d 104 (1995).

March 6, 1996 Carter pleaded guilty without a plea agreement.

The probation office prepared its presentence investigation report (PSI), which noted a substantial number of Carter's virtues. According to the PSI, Carter is a married father of three young children. While on bail, Carter worked at the Sunnyside School District as a teacher's aide and specialized in working with disabled children. Carter did not blame others for his predicament and held no grudges toward those who arrested and prosecuted him. These circumstances led the probation officer to consider Carter to be somewhat unique and unlike most defendants. Under the Sentencing Guidelines, Carter's base offense level was calculated as 34, to which four points were added under U.S.S.G. § 3B1.1 because of his role as a leader or organizer. Then three points were subtracted under U.S.S.G. § 3E1.1 for Carter's acceptance of responsibility. This led to an adjusted offense level of 35. Carter had no prior criminal history, placing him in Category I, and resulting in a sentence range of 168 to 210 months.

Carter requested a downward departure, citing his family and community ties, work history and unique level of remorse. He requested that the district court examine the four purposes of sentencing (deterrence, incapacitation, retribution and correction) in considering a departure, arguing that these purposes would be fully served by a more lenient sentence. He also cited his immediate acceptance of responsibility for his crime and his cooperation with prosecutors. The district court denied Carter's requests and sentenced him to 168 months in prison (the guideline minimum).

## II. Legal Analysis

Carter now argues that the district court erred in not granting him a downward depar-

ture. First, Carter argues that the court failed to consider the purposes of sentencing in not taking his specific circumstances into account. Second, Carter argues that the district court applied the guidelines formalistically and rigidly, misinterpreting their requirements. Finally, Carter argues that the district court erred in not requiring the government to move for a downward departure based on his cooperation. We consider each argument in turn.

■■■ We review for abuse of discretion. *See Koon v. United States,* — U.S. —, — – —, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996); *United States v. Billingsley,* 115 F.3d 458, 466 (7th Cir.1997). A district court abuses its discretion when it makes an error of law. *Koon,* — U.S. at — – —, 116 S.Ct. at 2047–48. A district court's decision to depart (or not) from the guidelines is "due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id.* at —, 116 S.Ct. at 2046. "District courts have an institutional advantage over appellate courts in making" sentencing determinations, *id.* at —, 116 S.Ct. at 2047, and we accept the district court's findings of fact supporting a refusal to depart unless clearly erroneous. *See United States v. Otis,* 107 F.3d 487, 490 (7th Cir.1997).

### A. Statutory Goals of Sentencing

■■■ Carter argues that the Sentencing Guidelines procedure was adopted to ensure that the four goals of sentencing (deterrence, incapacitation, retribution and correction) would be applied in sentencing determinations. *See* 18 U.S.C. § 3553(a)(2)(A)-(D) (1994).[2] He further argues that the district court refused to consider the purposes of

---

**2.** 18 U.S.C. § 3553(a)(2) provides:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-

  (2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

sentencing when calculating his sentence. Carter argues that these sentencing goals compel a more lenient sentence in the instant case. Carter argues that his 14–year prison sentence cannot be described as "sufficient, but not greater than necessary" to serve the purposes of sentencing. Id. at § 3553(a). Carter interprets 18 U.S.C. § 3553(a)(2) as directing the courts to test potential departure factors against the sentencing goals and to reject factors that are inconsistent with them. Carter points to the Supreme Court's opinion in *Koon*, —— U.S. at ——, 116 S.Ct. at 2051, as well as our recent opinion in *United States v. Pullen*, 89 F.3d 368 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997), to highlight his argument that the guidelines should be interpreted to serve the purposes of sentencing given all the facts of each case.

Carter misunderstands both *Koon* and *Pullen*. What the Supreme Court actually held in *Koon* was that courts are *not limited* to the goals of sentencing, not that the courts must abide by them, as Carter contends. *See Koon*, —— U.S. at ——, 116 S.Ct. at 2051. The *Koon* Court actually *rejected* a limitation on sentencing discretion by holding that a departure from the guidelines does not always have to be consistent with the four goals. And in *Pullen*, while we took *Koon* to reaffirm consistency with the goals as a reason favoring departure, we recognized that it did not mandate absolute consistency. *See Pullen*, 89 F.3d at 370. Thus, Carter "read[s] too much into § 3553(a)(2). The statute requires a court to consider the listed goals.... The statute says nothing about requiring each potential departure factor to advance one of the specified goals." *Koon*, —— U.S. at ——, 116 S.Ct. at 2051. Carter's argument therefore fails.

### B. Carter's Special Circumstances

Carter next argues that the district court erred in failing to consider the exceptional

nature of his circumstances which, he says, favor a downward departure, instead of the formalistic application of the guidelines. Carter points to his family, employment, remorse and acceptance of responsibility as evidence, all of which he claims the district court ignored, to show that his case is different from the ordinary case. While he concedes that his special circumstances are "discouraged" factors under the guidelines, Carter claims that they are sufficiently "exceptional" to take his case out of the "heartland." *Koon*, —— U.S. at ——, 116 S.Ct. at 2044.

The Sentencing Guidelines were intended to carve out a "heartland," or a set of typical cases, against which each successive case would be measured. *See Id.* Departures from the guidelines are allowed only in cases that involve factors for which the guidelines do not adequately account, either because the factors are nowhere incorporated into the guidelines or because the factors are present in an exceptional way. *See Id.* Therefore, a factor supporting departure from the guidelines must be sufficiently unusual either in type or degree "to take the case out of the Guideline[s'] heartland." *Otis*, 107 F.3d at 490 (quoting *Koon*, —— U.S. at ——, 116 S.Ct. at 2045).

The Supreme Court in *Koon* set out a test for a sentencing court considering a departure:

(1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual case?

(2) Has the Commission forbidden departures based on those features? [3]

(3) If not, has the Commission encouraged departures based on those features? [4]

(4) If not, has the Commission discouraged departures based on those features? [5]

---

**3.** "Forbidden" factors include race, sex, national origin, creed, religion and socio-economic status. U.S.S.G. § 5H1.10.

**4.** "Encouraged" factors are ones "the Commission has not been able to take into account fully in formulating the guidelines." U.S.S.G. § 5K2.0.

**5.** "Discouraged" factors are ones "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range" and include family ties and responsibilities, U.S.S.G. § 5H1.6, education or vocational skills, U.S.S.G. § 5H1.2, and any military, civic, charitable or public service record. U.S.S.G. § 5H1.11.

*Koon,* —— U.S. at ——, 116 S.Ct. at 2045 (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)). The Supreme Court then held:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis of departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.

*Id.*

Following *Koon,* the district court considered the special "discouraged" factors presented by Carter, such as his family and community ties and work record, and determined that his circumstances did not make his case a sufficiently exceptional one. The court even noted, "[i]n reaching this conclusion, this Court is not unmindful of the testimony of [the probation officer] to the effect that defendant Carter was in some respects 'unique.'" Memo Op. at 12 (footnote omitted). Yet, the court also noted, the probation officer summarized that he had "no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines." *Id.* The court thus concluded that Carter "has failed to show the Court that those factors warrant a departure." *Id.* at 6. While we conclude that the district court did not misunderstand the boundaries of its discretion, we believe Carter's arguments deserve some discussion.

i. Family Considerations

■ As the district court noted, family considerations are "discouraged" and warrant a departure only in the extraordinary and unusual case. *See, e.g., United States v. Gaskill,* 991 F.2d 82 (3d Cir.1993) (allowing departure when defendant solely responsible for care of his mentally ill wife); *United States v. Johnson,* 964 F.2d 124 (2d Cir.1992) (allowing departure when defendant, single mother, served as sole support for three small children under age six, institutionalized daughter's six-year-old child and seventeen-year-old son).

More common are the cases which have denied a downward departure for family responsibilities, even in compelling situations. *See, e.g., United States v. Bieri,* 21 F.3d 811 (8th Cir.1994) (departure rejected where both parents of small children were incarcerated); *United States v. Mogel,* 956 F.2d 1555 (11th Cir.1992) (departure rejected though defendant supported two minor children and her mother and was first-time offender); *United States v. Johnson,* 908 F.2d 396 (8th Cir.1990) (departure rejected for single mother of infant).

■ Carter's family circumstances, when compared to the foregoing cases, do not remove him from the heartland. As the First Circuit noted in *Rivera,* 994 F.2d at 948, it is not unusual "to find that a convicted drug offender is a [parent] with family responsibilities.... [Only] the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may transform the 'ordinary' case ... into a case that is not at all ordinary." While Carter's wife and three children will suffer during his incarceration, his children do have a mother to look after them, and, as Carter has repeatedly pointed out, loving grandparents (his parents), who will help her. "The disintegration of existing family life or relationships is insufficient to warrant a departure, as that is to be expected when a family member engages in criminal activity." *United States v. Canoy,* 38 F.3d 893, 907 (7th Cir.1994). "Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *Johnson,* 964 F.2d at 128.

Further, the goal of the guidelines "is to place federal sentencing on an objective, uniform, and rational (or at least articulable, nonintuitive) basis.... If ... family history were in an average case a permissible basis for leniency, this would resurrect the pre-guidelines regime of discretionary sentencing." *Pullen,* 89 F.3d at 371. What Carter

asks us to do is just what *Pullen* cautions against: Carter wants us to use his solid family history as a "permissible basis for leniency" under the guise of fulfilling statutory sentencing purposes. *Id.* "By this means the guidelines [would] be unraveled before the eyes of the judge." *Id.*

### ii. Employment Considerations

■ Carter argues that his post-arrest employment and "unusually firm dedication to reversing the course of his life" also merit a downward departure. Carter Br. at 35. The district court did not find Carter's employment extraordinary. In the lower court, Carter analogized his situation to that found in *United States v. Big Crow*, 898 F.2d 1326 (8th Cir.1990). The district court, however, found *Big Crow* to be "a bird of a different feather altogether." Memo. Op. at 10 n. 9. In *Big Crow*, the Eighth Circuit affirmed a downward departure based on the defendant's steady, pre-arrest employment over six years. *Big Crow*, 898 F.2d at 1332. He had earned enough to "more than adequately" care for his wife and two children on an Indian reservation with an unemployment rate of 72% and an average annual income of only $1042. *See Id.* The defendant had also made consistent efforts to overcome the difficult environment of the reservation. *See Id.* at 1331. In contrast, Carter stresses that he has two caring parents as well as a supportive wife. In that environment, it is not necessarily exceptional that Carter would hold a job or improve his life. Rather, this conduct might be expected of him.

■ Further, employment is a "discouraged" factor and warrants consideration only in exceptional cases. *See United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir.1990). While the district court found Carter's employment "laudable," the court did not find it to be "so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction." Memo. Op. at 9 (quoting *United States v. Harrington*, 947 F.2d 956, 962 (D.C.Cir.1991)). In fact, the district court noted that included in the terms of Carter's release in lieu of detention before trial was a requirement that he seek and maintain employment. Here, of course, the nature of the employment was strikingly meritorious. However, the district court's decision not to depart, since based on the correct standards, is not reviewable.

### iii. Remorse and Acceptance of Responsibility

■ Carter also argues that he should have received a departure in recognition of his remorse and immediate acceptance of responsibility for his crime. Carter did receive a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. The district court considered this sufficient and found "no further departure ... warranted." *Id.* at 10. The district court held that Carter's remorse had been rewarded in the three-level reduction, thereby joining remorse with responsibility. The district court said that implicit in the phrase "acceptance of responsibility," as used in the guidelines, is an admission of moral wrongdoing. *See United States v. Dyce*, 78 F.3d 610, 618 (D.C.Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996).

Carter claims that the district court's amalgamation of remorse and acceptance of responsibility was erroneous. Carter cites *United States v. Jaroszenko*, 92 F.3d 486 (7th Cir.1996), to support his argument that the district court was required to consider remorse separately. In *Jaroszenko*, the district judge thought the defendant deserved a downward departure for remorse, but did not grant it because he "erroneously concluded that the guidelines prevented him from considering remorse in his exercise of discretion." *Id.* at 490–91. We held that "although the guidelines may discourage the consideration of a defendant's remorse in most decisions about downward departures, they do not contain an absolute ban on a district court's indulging in such a consideration." *Id.*

Therefore, we must review the record to determine whether the district court in the present case exercised its discretion in refusing to depart from the guidelines. An examination of the record shows that Carter's reliance on *Jaroszenko* is misplaced. The district court recognized its authority to

depart, but chose not to do so. While in *Jaroszenko* the district court's statements indicated a mistaken interpretation of the guidelines, in the present case there is no evidence to indicate that the district court believed it lacked authority to depart. Rather, the court recognized that it may "depart from the applicable guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of the kind not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" Memo. Op. at 4–5 (quoting 18 U.S.C. § 3553(b)). "This Court notes ... that while it has the power to downward depart based upon remorse in extraordinary cases, it has chosen not to do so under the facts presented." Memo. Op. at 11. Therefore, the district court chose to join remorse with acceptance of responsibility because it felt Carter's remorse deserved no additional departure, not because it believed that departure was impermissible. While we may prefer a separate discussion of the two, we find no error here.

### C. Cooperation with Authorities

■ Carter's final argument is that the district court erred in not requiring the government to move for a downward departure based on his cooperation. Carter claims the government has no rational reason for refusing to request a downward departure. However, "[a] defendant has no constitutionally protected right to a downward departure based on alleged substantial assistance to the government." *United States v. Kelly*, 14 F.3d 1169, 1177 (7th Cir.1994). And, the district court notes, both the statute, 18 U.S.C. § 3553, and the guidelines, U.S.S.G. § 5K1.1, make downward departures for cooperation contingent on a motion from the government.[6] The Supreme Court in *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct.

1840, 1843, 118 L.Ed.2d 524 (1992), noted that "in both [18 U.S.C.] § 3553(e) and [U.S.S.G.] § 5K1.1 the condition limiting the Court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted."

■ Of course, the government's power is "subject to constitutional limitations that district courts can enforce." *Id.* District courts have authority to review the government's refusal to file if that refusal was based on an unconstitutional motive, such as bias against the defendant's race or religion. *Id.* at 185–86, 112 S.Ct. at 1843–44. Given this authority, "the burden is on the defendant to make a substantial threshold showing [of unconstitutional motive] before he becomes entitled to an evidentiary hearing on the matter." *Kelly* 14 F.3d at 1177–78.

■ Carter asserts that the government refused to request a downward departure either because he chose to exercise his right to testify (at the suppression hearing) or for no reason whatsoever. The district court found nothing to substantiate these complaints. Therefore, while the mere wish by the government for the longest possible sentence would be inappropriate, Carter has failed to make a threshold showing of any unconstitutional motive on the part of the government.

We agree with the district court that this is "troubling," for "[a]s a matter of policy, one would expect that such cooperation should be rewarded." Memo. Op. at 15. After all, but for Carter's cooperation, two other cocaine dealers would not have been arrested. The district court noted that Carter's "efforts to do the right thing garnered him nothing. He could have chosen not to cooperate and would have been no worse off than he is now." *Id.* However, "[t]he prosecutor, not the court[,] is to assess the value of the defendant's assistance." *United*

---

**6.** 18 U.S.C. § 3553(e) provides in part: *"Upon motion of the Government,* the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense...." (Emphasis supplied.)

U.S.S.G. § 5K1.1 provides: *"Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." (Emphasis supplied.)

*States v. Burrell,* 963 F.2d 976, 985 (7th Cir.1992).

III. Conclusion

This is a difficult case because we cannot gainsay the defendant's virtues and the sympathetic considerations that he presents. But, as our discussion indicates, they do not require of the district court a different exercise of discretion. We conclude that the district court understood the parameters of its discretion and made its decision within them. We therefore cannot review the decision nor disturb the sentence. Carter's sentence is

AFFIRMED.