[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 30, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11966

_____

D.C. Docket No. 06-00155-CR-ORL-22-KRS

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

RICHARD TOMASKOVIC,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 30, 2008)**

Before EDMONDSON, Chief Judge, HILL and ALARCON,* Circuit Judges.

*Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

This appeal involves two sentencing issues arising from Richard Tomaskovic's (Tomaskovic) conviction upon his guilty plea of violating the International Parental Kidnapping Crime Act (IPKCA), 18 U.S.C. § 1204.[1] Tomaskovic challenges the district court's application of the three-level increase, under U.S.S.G. § 2J1.2(b)(2), to his base level offense for substantial interference with the administration of justice resulting in "the unnecessary expenditure of substantial governmental or court resources." [2] He also objects to the finding by the district court that his offense of international parental kidnapping was "extensive in scope, planning and preparation" under U.S.S.G. § 2J1.2(b)(3)( C), warranting a two-level increase.

The district court sentenced Tomaskovic to twenty-seven months' imprisonment followed by one year of supervised release. Finding no clear error, we affirm.

---

[1] The IPKCA bars a parent from removing a child from the United States or retaining outside the United States a child who has been in the United States, with the intent to obstruct the other parent's right to physical custody. 18 U.S.C. § 1204(a). A violation of IPKCA is a Class E felony, subject to three years' imprisonment, and a $250,000 fine. *See United States v. Amer*, 110 F.3d 873 (2d Cir. 1997). Tomaskovic was named in a one-count first superceding indictment on November 1, 2006, charging that he violated IPKCA on or about September 29, 2005, when he unlawfully removed his son from the United States to Honduras.

[2] The sentencing guideline for a violation of IPKCA is U.S.S.G. § 2J1.2, involving the obstruction of justice. This section specifies a base offense level of fourteen. U.S.S.G. § 2J1.2(a).

2

# I.

The following facts are pertinent to the two issues on appeal. After meeting through an internet dating service, childless, fifty-six year-old Tomaskovic married his fourth wife, Ukraine citizen, Nataliya Vladislavona (Nataliya), in January 2002. In August 2003, infant son, N., was born.[3] The couple and their child moved from Florida to the Ukraine in July 2004.

Although the marriage had already begun to deteriorate, in January 2005, Tomaskovic bought three airline tickets back to the United States for himself, Nataliya and N. However, on February 23, 2005, Nataliya petitioned a Ukrainian district court for an order dissolving the marriage and preventing N. from leaving the country. On February 25, 2005, the court forbade the removal of N. from the Ukraine.

Nevertheless, on April 12, 2005, Tomaskovic and N. left the Ukraine and entered the United States through JFK Airport in New York, and traveled to central Florida. He and N. stayed with a friend, Lewis Nester, for approximately two weeks. On April 28, 2005, the Ukrainian court dissolved the marriage and gave sole parental custody to Nataliya.

According to Nester, Tomaskovic said that Interpol was looking for him

---

[3] *See* 11th Cir. R. 25-5(b).

and, for N.'s safety, he was going to Honduras, where he believed he would not be subject to extradition. Nester said that Tomaskovic used prepaid cellular telephones, presumably untraceable.

Although already legally divorced in the Ukraine, on May 2005, Tomaskovic initiated his own divorce proceedings in a Florida circuit court, presumably with the intention of formally obtaining custody of N. Nataliya was notified by publication. Apparently shocked when Nataliya hired Florida counsel and answered his divorce petition, Tomaskovic and N. fled, refusing to tell Nester where they were headed in case he was questioned by authorities.

Meanwhile, in June 2005, the Florida court found it likely that Tomaskovic had violated the Ukrainian court's order and had abducted N. from Nataliya, the custodial parent. It ordered N. be placed with the Florida Department of Children and Families, and Tomaskovic to appear for an evidentiary hearing. When Tomaskovic failed to appear, the Florida court ordered that Tomaskovic be taken into custody.[4]

Apparently, after leaving Nester's central Florida home, Tomaskovic and N. spent the next few months living in Idaho with another friend, Diane Arbuckle.

---

[4] Ten months later, in July 2006, the Florida court, giving full faith and credit to the earlier Ukrainian judgment, granted Nataliya sole parental custody for N.

Tomaskovic indicated to Arbuckle that he had been awarded custody of N. and that the two of them wanted to make a clean start.

From Idaho, the pair traveled to California, where Tomaskovic sold his car. Father and son then, on or about September 29, 2005, traveled to Honduras by way of Mexico.

Almost a year later, in August 2006, neighbors complained to authorities about N.'s welfare. Tomaskovic, using the assumed name of George Calderoni, was questioned and taken into custody by Honduran authorities. They in turn, contacted the United States Embassy.[5]

Within twenty-four hours, Calderoni was positively identified as Tomaskovic. After being questioned by the Consul General, an investigation was instituted. Two Miami-based FBI agents, already in Honduras on other business, were contacted. Special FBI Agent Nickolas Savage obtained an arrest warrant and flew to Honduras to recover N. and return Tomaskovic to the United States, where he was formally arrested on August 19, 2006.[6]

---

[5] Tomaskovic, using the assumed name of Calderoni, admitted to purchasing a fraudulent marriage certificate in order to protect himself from Honduran thieves, not, he stated, in order to disguise his identity.

[6] After a sixteen-month separation, N. was returned to his mother. They are presently living in the Ukraine.

After the arrest, Special Agent Savage worked the Tomaskovic investigation on a full-time basis, retracing the father and son's movements from the Ukraine to New York to Florida to Idaho to California to Mexico and to Honduras. He interviewed approximately a dozen people, including Nester, Arbuckle (by telephone), and the purchaser of Tomaskovic's car in California.

## II.

"Congress has prescribed three standards for reviewing a district court's use of the Sentencing Guidelines: appellate courts are to review purely legal questions *de novo*, a district court's factual findings for clear error, and, . . . a district court's application of the guidelines to the facts with 'due deference.'" *United States v. White*, 335 F.3d 1314, 1317 (11th Cir. 2003) (citations omitted). "The district court's interpretation of the sentencing guidelines is subject to *de novo* review on appeal, while its factual findings must be accepted unless clearly erroneous." *United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005) (citations omitted).

## III.

The first issue on appeal involves the specific offense characteristic of obstruction of justice under U.S.S.G. § 2J1.2(b)(2), which states: "If the offense resulted in substantial interference with the administration of justice, increase [the defendant's base offense level of fourteen, for violating IPKCA] by 3 levels."

Application Note 1 to U.S.S.G. § 2J1.2 defines "Substantial interference with the administration of justice" to include "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." *Id*. § 2J1.2, cmt. n. 1; *see United States v. Johnson*, 485 F.3d 1264, 1271 (11th Cir. 2007) (citing *United States v. Norris*, 217 F.3d 262, 273 (5th Cir. 2000) (where it is not necessary for the government to particularize a specific number of hours expended in order to sustain the enhancement)); *cf. United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006).

At sentencing, Tomaskovic objected to the three-level enhancement under U.S.S.G. § 2J1.3(b)(2), arguing, *inter alia*, that there was no evidence that his actions substantially interfered with the administration of justice by causing the unnecessary expenditure of substantial governmental or court resources. He claimed that, in essence, Special Agent Savage was just doing his job when he obtained an arrest warrant and flew to Honduras to arrest Tomaskovic and retrieve N.

While in Honduras, Tomaskovic argues that all Savage did in Honduras was to talk to three people already present at the embassy. When Savage returned to

the United States, his "full-time investigation" was basically to interview approximately a dozen people, mostly by telephone, and to collect record evidence.

In response, the government argues that the district court committed no clear error in finding the three-level enhancement appropriate for the unnecessary expenditure of substantial governmental or court resources as Tomaskovic:  (1) instituted fraudulent, unnecessary, yet substantial, Florida court proceedings in attempting to circumvent a pre-existing Ukrainian court order dissolving his marriage and awarding sole parental custody to Nataliya; (2) forced Special Agent Savage to obtain an arrest warrant and incur the expenditure of flying to Honduras to retrieve both Tomaskovic and N.; (3) caused the Honduras Counsel General and two Honduran FBI agents to investigate his real identity; (4) upon their return to the United States, caused Special Agent Savage and another field agent to work full-time in an attempt to reconstruct Tomaskovic's travel and activity prior to his arrival in Honduras; (5) caused Special Agent Savage to interview a dozen witnesses and to collect other evidence of Tomaskovic's violation of IPKCA.

We have thoroughly reviewed the sentencing hearing transcript, the parties' briefs, the arguments contained therein and reiterated at oral argument.  We conclude that the district court committed no clear error in finding that

Tomaskovic's cumulative actions over a sixteen-month period, through four countries, resulted in substantial interference with the administration of justice. These actions caused the unnecessary expenditure of substantial governmental or court resources, and necessitated the three-level enhancement under U.S.S.G. § 2J1.2(b)(2) to Tomaskovic's base offense level.

## IV.

The second issue on appeal involves the district court's finding of fact that Tomaskovic's IPKCA offense was "otherwise extensive in scope, planning, or preparation." This finding warranted an additional two-level increase in Tomaskovic's base offense level, pursuant to U.S.S.G. § 2J1.2(b)(3)(C).[7]

At sentencing, Tomaskovic objected to the two-level enhancement under U.S.S.G. § 2J1.2(b)(3)(C), arguing, *inter alia*, that there was no evidence in the record that his actions were extensive in scope, planning, or preparation. He claims that he acted only upon impulse after impulse, "wanting only the best" for N. He contends that his flight from the Ukraine to Florida to Idaho to California to Mexico to Honduras with N. was not premised upon an objective, premeditated

---

[7] U.S.S.G. § 2J1.2(b)(3)(C) reads in its entirety: "If the offense (A) involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects; (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter; or (C) was otherwise extensive in scope, planning, or preparation, increase by 2 levels." U.S.S.G. § 2J1.2(b)(3)(C).

plan, but was premised merely upon the subjective emotions of anxiety, fear and panic.

In response, the government argues that the district court committed no clear error in finding the two-level enhancement appropriate for the extensive scope, planning, or preparation of Tomaskovic's flight plan because: (1) Tomaskovic and N. were "on the run" for sixteen months, an extensive time; (2) they fled through four different countries; (3) they stayed with a number of different people in different states; (4) Tomaskovic told Nester that when authorities "got close" to finding him, he planned to travel to Honduras, based upon Tomaskovic's belief that the Honduran government maintained a lenient attitude regarding extradition; (5) that Tomaskovic filed a fraudulently misleading divorce petition in a Florida court for the dissolution of his previously dissolved marriage; (6) that Tomaskovic purchased disposable prepaid cellular telephones in order to elude detection and avoided discussing his location on the telephone; and (7) that Tomaskovic purchased false identity documents in Honduras in order to hide from authorities. *See United States v. Holland*, 22 F.3d 1040, 1046 (11th Cir. 1994) (where "this circuit does not employ a precise definition for the 'otherwise extensive' standard, there are a number of factors relevant to the extensiveness determination, including the length and scope of the criminal activity as well as

the number of persons involved").

Again, we have thoroughly reviewed the record. We conclude that the district court committed no clear error in finding that Tomaskovic's cumulative actions warranted the two-level enhancement under U.S.S.G. § 2J1.2(b)(3)( C) for "extensive scope, planning, or preparation" in his commission of the crime of international parental kidnapping, 18 U.S.C. 1204(a), an offense to which he pled guilty.

## V.

Finding no clear error, the district court is

**AFFIRMED.**