NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 17, 2009
Decided December 21, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2004

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v.* <br><br> NANCY HAYES, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. <br><br> No. 2:08-CR-69-001 <br><br> Joseph Van Bokkelen, <br> *Judge*. |

**O R D E R**

Nancy Hayes pleaded guilty to making a false statement on an application for a United States passport, *see* 18 U.S.C. § 1542. Because she obtained the passport as part of a larger scheme in which she abducted her daughter and took her to Mexico, the district court followed a cross-reference in Chapter 2 of the Sentencing Guidelines for the § 1542 violation and instead calculated her guidelines' imprisonment range as if she had been convicted of international parental kidnapping, *see* 18 U.S.C. § 1204. In this appeal Hayes argues that the district court erred in following the cross-reference and then compounded the mistake by misapplying two upward adjustments in the Chapter 2 guideline for § 1204. Hayes further

argues that the court should have reduced her prison term by the amount of time she resided in a halfway house as a condition of her pretrial release. Because we conclude that the district court correctly calculated the guidelines range and imposed a reasonable sentence, we affirm.

## I. Background

In 2004 Hayes lost custody of her daughter and was permitted only supervised visitation. At that time the girl's father was given sole custody. The details of the custody dispute are unclear from the record, but at sentencing the father testified that Hayes is a "gestational surrogate" and has no biological connection to the girl. The parties did not formalize their surrogacy arrangement though, and Hayes apparently had second thoughts on the matter. Consequently, as the birth mother, Hayes retained custody for four years before the father went to court and secured visitation and, ultimately, sole custody.

Hayes fought in state court to recover the right to visit her daughter without supervision. But she also made plans to begin a new life with her daughter in Mexico, and in February 2006 she walked into a post office in Northwest Indiana and used another woman's name and birth certificate to apply for a passport, which she received. She also procured a fraudulent Indiana driver's license in the same name. Hayes obtained books and articles on parental abduction, as well as information about applying for Mexican citizenship, and made arrangements to stay in a friend's vacation home in Mexico. She emptied her retirement account, stopped making her mortgage and car payments, and placed approximately $160,000 in the same friend's bank account, which she could access using a debit card in the friend's name. Hayes then boxed up her possessions and placed them in storage at the friend's primary residence in Indiana. In July 2007, having finally secured court-authorized, unsupervised visitation with her daughter, Hayes abducted the girl, then 10 years old, and took her to Mexico.

When Hayes did not return the child to her father, Illinois police and the FBI launched a criminal investigation. Two Lincolnshire, Illinois police detectives spent over three weeks investigating the abduction and ultimately tracking Hayes to Mexico. In Mexico the FBI worked with local officials to watch the home where Hayes and her daughter were living and arrest Hayes. Hayes initially tried to convince the agents that she was the person named in the fraudulent passport but eventually admitted her true identity and was returned to the United States. She pleaded guilty to child abduction in Illinois state court and was sentenced to three years' imprisonment. She served a total of 12 and one-half months before she was paroled.

Hayes then was taken into custody in the Northern District of Indiana on the charge that she made a false statement on the passport application. The district court released Hayes on bond with the condition that she reside at Bradley House, a halfway house in Michigan City, Indiana. Hayes pleaded guilty and continued to reside at Bradley House while awaiting sentencing.

The probation officer who prepared the presentence investigation report ("PSR") applied U.S.S.G. § 2L2.2, the guideline applicable to the passport violation. But that guideline includes a cross-reference to U.S.S.G. § 2X1.1 for cases where the defendant "used a passport . . . in the commission or attempted commission of a felony offense." U.S.S.G. § 2L2.2(c)(1). Section 2X1.1, which broadly applies to attempts, solicitations, and conspiracies not covered elsewhere in Chapter 2, in turn directs the sentencing court to apply the "base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." *Id.* § 2X1.1(a). The PSR noted that Hayes had "used" the fraudulent passport to commit international parental kidnapping. That felony is defined in 18 U.S.C. § 1204, which makes it a federal crime to remove a child from the United States "with intent to obstruct the lawful exercise of parental rights." The PSR then turned to U.S.S.G. § 2J1.2, which is titled "Obstruction of Justice" but is the guideline applicable to parental kidnapping. The PSR started with a base offense level of 14 and added 3 levels under § 2J1.2(b)(2) because the offense had resulted in "substantial interference with the administration of justice." Two more levels were added under § 2J1.2(b)(3) because the offense was extensive in scope, planning, and preparation.

In the initial draft of the PSR, the probation officer did not explain the factual basis for either increase in offense level under § 2J1.2(b), and Hayes objected to both, as well as to the application of the cross-reference. With respect to the cross-reference, Hayes argued that her "use" of the passport was not established because she did not present it to Mexican officials when she crossed the border. She further argued that the facts did not support an increase for substantial interference with the administration of justice or the scope of the offense. The government responded that whether Hayes used the passport to cross the border was irrelevant because she obtained it to facilitate the kidnapping. And the upward adjustments were justified, the government continued, because, as to subsection (b)(2), Hayes had violated the state-court custody order and caused law-enforcement agencies to expend substantial time and resources to find and return the child. As to subsection (b)(3), the government noted that Hayes had spent months preparing for the kidnapping by securing the passport and other identification documents, closing bank accounts, ceasing her mortgage and car payments, and recruiting her friend to assist in the kidnapping.

The probation officer then revised the PSR to endorse the government's explanations for the cross-reference and proposed adjustments. With respect to the increase under § 2J1.2(b)(2), the commentary to the guideline defines "substantial interference" to include the "unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2 cmt. n.1. Citing that language, the revised PSR recommended the increase because Hayes's violation of the state custody order and flight to Mexico had prompted a 20-day investigation by multiple agencies in two countries.

The district court overruled Hayes's objections. The court adopted the facts in the PSR and ruled that they "unequivocally" established that Hayes had falsely obtained a passport for the commission of a kidnapping offense. Thus, the court concluded, the cross-reference in § 2L2.2(c)(1)(A) directed the court to apply § 2J1.2, the guideline for the kidnapping. Next, the court concluded that Hayes qualified for the 3-level increase under § 2J1.2(b)(2) for substantially interfering with the state court's administration of justice in a custody proceeding. By taking the child all the way to Mexico, the court explained, Hayes's interference with the court order was substantial. The court reasoned that this "was not a case of failing to return the child over the weekend, or even taking the child to another town." Instead, the court continued, Hayes had chosen "to violate a State Child Custody Order and remove both herself and the child out of the country." The court further concluded that Hayes's "planning and preparation for the kidnapping were extensive in scope" and therefore warranted the additional two-level increase under § 2J1.2(b)(3). The resulting total offense level of 17, coupled with Hayes's category I criminal history, yielded a guidelines' imprisonment range of 24 to 30 months. Hayes, though, already had served 12 and one-half months in Illinois for child abduction, so the court applied U.S.S.G. § 5K2.23, which encourages a below-range sentence if the defendant has completed a term of imprisonment for related conduct. The court concluded that a sentence within the range, less time served for the state offense, was appropriate and imposed a prison term of 12 months and 1 day.

## II. Discussion

On appeal Hayes argues that the district court incorrectly calculated her offense level using the base offense level and adjustments in § 2J1.2 instead of applying § 2L2.2. She fails to acknowledge, however, that the court applied § 2J1.2, the guideline for international parental abduction, by way of the cross-reference in § 2L2.2(c). That cross-reference states that if the defendant "used" the fraudulent passport "in the commission or attempted commission of a felony offense, other than an offense involving violation of the immigration laws, apply . . . § 2X1.1." Section 2X1.1(a), in turn, directs the sentencing court to apply the

applicable guideline for the underlying felony offense. *See United States v. Bernard*, 373 F.3d 339, 341 (3d Cir. 2004) (describing generally the operation of the cross-reference under § 2L2.2(c) and § 2X1.1).

As for the cross-reference, Hayes renews her contention that it was error to apply § 2J1.2 because she did not present the fraudulent passport to enter Mexico and thus it was never "used." But she cites no authority, and we have found none, supporting a rule that the cross-reference cannot apply unless the defendant actually presented the fraudulent passport to border authorities. The district court's factual finding that the passport was "used" in the commission of the kidnapping is not clearly erroneous. Hayes obtained the passport to facilitate and conceal her presence in Mexico, she carried it with her to Mexico, and when apprehended she tried to convince authorities that she was the person named in the passport. That is enough to support the district court's finding that she "used" the passport in the commission of the kidnapping.

Once the district court determined that Hayes had used the passport in the commission of the international kidnapping offense, the guidelines dictated that her offense level be determined based on the specific characteristics of the kidnapping. *See* U.S.S.G. § 2X1.1(a) (instructing sentencing court to apply the "guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct"); *United States v. Samuels*, 521 F.3d 804, 815-16 (7th Cir. 2008); *United States v. Almaguer*, 146 F.3d 474, 476 (7th Cir. 1998); *United States v. Ellison*, 113 F.3d 77, 82 (7th Cir. 1997); *United States v. Corbin*, 998 F.2d 1377, 1383-85 (7th Cir. 1993). Hayes argues that the court erroneously applied the two-level increase under § 2J1.2(b)(3)(C) because the *passport offense* was not "extensive in scope, planning, or preparation." The issue before the district court, however, was whether the *kidnapping* was extensive in scope, planning, or preparation, and Hayes makes no attempt to challenge the court's finding in this regard.

Hayes's next argument falls closer to the mark but is still unavailing. Hayes contends that the district court erred when it applied the three-level increase under § 2J1.2(b)(2) on the ground that the kidnapping resulted in a substantial interference with the administration of justice. The commentary to § 2J1.2 defines substantial interference to include, as relevant here, the "unnecessary expenditure of substantial governmental . . . resources." U.S.S.G. § 2J1.2 cmt. n.1. As Hayes notes, several circuits have held that resources expended in the investigation and prosecution of the offense itself cannot form the basis for the increase in offense level under § 2J1.2(b)(2). *See United States v. Johnson*, 485 F.3d 1264, 1271-72 (11th Cir. 2007) (noting that upward adjustment could not be based on "expenses associated with prosecuting [the] underlying perjury offense"); *United States v. Norris*, 217 F.3d 262, 273 (5th Cir. 2000) (concluding that "expenses incurred with the investigation and prosecution" of defendant's perjury offense may not be considered,

"[o]therwise, every perjury conviction would carry this enhancement"); *United States v. Sinclair*, 109 F.3d 1527, 1539 (10th Cir. 1997); *United States v. Duran*, 41 F.3d 540, 546 (9th Cir. 1994); *United States v. Jones*, 900 F.2d 512, 522 (2d Cir. 1990). In light of these cases, Hayes argues that the district court improperly based the upward adjustment on the resources expended by the government investigating the international parental kidnapping, traveling to Mexico, and returning her and her daughter to the United States.

The district court nominally based the increase on Hayes's interference with the state-court custody order, but as a practical matter the court applied the adjustment because of the time and expense of investigating the kidnapping. The district court reasoned that the interference with the custody order was substantial because Hayes took the child to Mexico, as opposed to simply "failing to return the child over the weekend, or even taking the child to another town." But taking the girl out of the country to Mexico is the only reason that § 1204 and the cross-reference to § 2J1.2 are even relevant to this prosecution for passport fraud, so it is difficult to see how the *manner* in which Hayes violated the custody order could have made the interference with that order any more or less substantial unless "substantial" is measured against the time and expense involved in getting the girl back. If the interference with the custody order was substantial simply because the kidnapping was *international*—as the court seems to suggest—then every violation of § 1204 would trigger application of § 2J1.2(b)(2) if there is an order of custody in place. Perhaps recognizing this, the government shifts course on appeal and rather than focusing on Hayes's interference with the state-court order, simply contends that the substantial resources expended to investigate the kidnapping justify the increase in offense level.

This circuit has not yet addressed the application of § 2J1.2(b)(2) within the context of a § 1204 prosecution. In fact, we have found few cases involving this offense and even fewer addressing the increase in offense level under subsection (b)(2). In *United States v. Amer*, 110 F.3d 873, 885 (2d Cir. 1997), the Second Circuit held that the upward adjustment was warranted where the government did not conduct an extensive investigation or attempt to retrieve the children but the defendant "prevented proper legal proceedings from occurring" by removing his children from the country before his estranged wife could seek custody. The Eleventh Circuit has also upheld the application of subsection (b)(2) in a nonprecedential decision where the defendant instituted fraudulent state-court divorce and custody proceedings and also caused the FBI to obtain an arrest warrant, fly to Honduras to retrieve him and the child, investigate his real identity, and develop the case against him. *United States v. Tomaskovic*, 275 F. App'x 884, 887 (11th Cir. 2008).

Although we have not had occasion to address the application of § 2J1.2(b)(2) in the context of § 1204, we have discussed the application of the guideline in several obstruction-of-justice cases. And in that context we have not distinguished between the resources

expended in the investigation and prosecution of the defendant's offense and any other expenses necessary to address the additional consequences of that offense. Instead, we have approved the application of the upward adjustment where the district court based its findings, at least in part, on expenditures that were arguably necessary to the investigation and prosecution of the underlying crime. *See United States v. Tankersley*, 296 F.3d 620, 623-24 (7th Cir. 2002) (upholding upward adjustment under § 2J1.2(b)(2) for criminal contempt conviction where defendant's sale of yacht in violation of court order caused government and court-appointed receiver to expend substantial resources to investigate the defendant's actions and locate yacht); *United States v. Bradach*, 949 F.2d 1461, 1463 (7th Cir. 1991) (concluding that increase was justified for perjury conviction where defendant's perjury and subornation of perjury from three others not only impaired grand-jury proceedings but "necessitated four perjury-related trials," including the defendant's own trial); *United States v. Lueddeke*, 908 F.2d 230, 234 (7th Cir. 1990) (upholding application of § 2J1.2(b)(2) to perjury conviction because defendant's perjury caused government agents to spend two weeks "trying to sort out the truth"). In *Tankersley* we rejected the defendant's argument that the sentencing judge had "double counted" by basing the upward adjustment on the same conduct that led to his underlying prosecution for criminal contempt. 296 F.3d at 624. As we explained, the defendant committed criminal contempt and was sentenced under § 2J1.2 for selling his yacht and trying to hide the proceeds in violation of a court order, and he was given the increase because his conduct caused the government to expend substantial resources tracking down and determining what happened to the yacht. *Id.*

In light of our approach to similar applications of § 2J1.2(b)(2) and the application of the upward adjustment in the very few cases to address the issue in the kidnapping context, we reject Hayes's argument. As in *Tankersley*, Hayes was sentenced under § 2J1.2 because she kidnapped her daughter to Mexico, and the upward adjustment applied because her conduct resulted in the substantial expenditure of governmental resources to find and return Hayes and the girl. *See* 296 F.3d at 624. Thus, the district court's increase of Hayes's offense level under § 2J1.2(b)(2) was not an erroneous application of that guideline.

Finally, Hayes's last argument—that the district court should have further reduced her prison sentence to compensate for the nearly eight months she resided at the halfway house as a condition of her bond—lacks merit. Hayes contends that her halfway-house confinement was equivalent to serving time on the false-passport charge, and thus at the end of her prison term, she will have served more time in prison "than minimally sufficient to achieve the broad goals of sentencing." In her view the district court should have applied U.S.S.G. § 5G1.3 to reduce her prison sentence by the amount of time she spent at the halfway house.

But § 5G1.3 was not applicable to Hayes's pretrial residency in the halfway house because by then her "term of imprisonment" for the related state conviction had been completed and her presence in the facility had nothing to do with that conviction. *See* U.S.S.G. § 5G1.3(b); *Witte v. United States*, 515 U.S. 389, 405 (1995). Moreover, the district court imposed a prison sentence within the correctly calculated guidelines range (minus the time served in prison on the state charge), and that sentence is presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, (2007); *United States v. Williams*, 553 F.3d 1073, 1083-84 (7th Cir. 2009). That the sentencing court did not give Hayes an even bigger break based on her halfway-house confinement was not an abuse of discretion. *Cf. Ramsey v. Brennan*, 878 F.2d 995, 996 (7th Cir. 1989) (deferring to BOP policy that time served at halfway house prior to trial does not constitute "custody" for purposes of statute permitting credit for time served).

AFFIRMED.