UNITED STATES of America,
Plaintiff–Appellee,

v.

Roberto Marcelo ALMAGUER,
Defendant–Appellant.

No. 97–3495.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1998.

Decided June 4, 1998.

Timothy M. O'Shea, Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Morris D. Berman, Berman Law Office, Madison, WI, for Defendant–Appellant.

Before COFFEY, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Roberto Almaguer pleaded guilty to violating 18 U.S.C. § 922(g)(1) by being a felon in possession of a firearm. The district court sentenced Almaguer outside the Guidelines range under U.S.S.G. § 5K2.0, which provides for departures for unusual circumstances not taken into account by the Sentencing Commission. The district court concluded that Almaguer's brandishing a gun in front of his seven-year-old stepson and threatening to shoot the boy warranted a departure. Because we conclude that the Guidelines have already taken this conduct into account, and the district court made no finding that the conduct was present to a degree not taken into account, we vacate Almaguer's sentence and remand for re-sentencing.

## I. Background

Almaguer came to the United States from Cuba in 1980 as part of the Mariel boat lift. Since then he has been in constant trouble with the law. In 1981, while in Wisconsin, Almaguer was convicted of possessing a small amount of marijuana and was sentenced to one year probation. In 1983, while in Louisiana, Almaguer had five separate convictions: possessing a concealed weapon, selling cocaine, possessing marijuana, felon in possession of a firearm, and attempted manslaughter. His attempted manslaughter conviction resulted from his shooting a police officer who was executing a search warrant for Almaguer's home. For this shooting, Almaguer served all of a 10–year sentence at hard labor. He was released in February 1994.

Since the early 1980's, Almaguer has maintained romantic relationships with two women: Maria Martinez, with whom he has one son, Yohan, and Barbara Barrios, with whom he has two sons, Roberto Jr. and Alexis. Also in the early 1980's, Almaguer had a daughter with a third woman but he seems to have lost contact with both his daughter and her mother. In 1992, while Almaguer was still serving his prison term, he married a fourth woman, to whom he is still married. In 1996, Almaguer moved from Louisiana to Madison, Wisconsin, along with Barrios, Martinez, Almaguer's three sons, and Martinez's children from another relationship. Barrios and Martinez each maintained separate apartments where Almaguer divided his time. After arriving in Madison, Barrios and Almaguer began selling cocaine for someone named Eligio Bacallao, who was later indicted.

On January 18, 1997, Almaguer was at Martinez's apartment watching his son Yohan, then aged thirteen, and Luis Niera, one of Martinez's sons from another relationship, who was then seven years old. Almaguer told Luis to clean his room and Luis refused, so Almaguer got a .38 revolver from a closet, pointed it toward Luis, told him that he would shoot him, and pulled the trigger. Fortunately for Luis, the revolver's hammer fell on an empty chamber. The next day, Martinez called the Madison police and reported that Almaguer had pointed a gun at her son. The police interviewed Yohan and Luis separately, and each told a similar story: Almaguer had threatened to shoot Luis and pulled the revolver's trigger. The police arrested Almaguer. (The boys later recanted their stories, but the district court found that the later recantation was false.)

With Almaguer in custody, Martinez and Barrios saw an opportunity to be rid of him, so they planted cocaine in his apartment and informed the police where to find it, which they promptly did. On January 30, 1997, a federal grand jury indicted Almaguer for one count of felon in possession of a firearm, one count of possession of cocaine with the intent to distribute, and one count of possessing cocaine base with the intent to distribute. Martinez later told the federal prosecutors

that she had planted the cocaine evidence, so the government moved to dismiss the two cocaine counts, leaving only the firearms count, to which Almaguer pleaded guilty on July 18, 1997.

Almaguer appeared for sentencing on September 24, 1997. The final presentence report calculated Almaguer's offense level as 17 and his criminal history category as II, which resulted in a sentencing range of 27–33 months. (This final offense level included a three-level reduction for acceptance of responsibility, which both parties and the district court accepted as appropriate.) But the presentence report recommended two separate upward departures: an upward departure in criminal history to category III under U.S.S.G. § 4A1.3, and an upward departure of three offense levels to 20 under U.S.S.G. § 5K2.0. The district court accepted the report's recommendation for both upward departures, which resulted in a sentencing range of 41 to 51 months. The court reasoned that Almaguer's brandishing the gun in front of Luis warranted the three-level departure under § 5K2.0. Interestingly, it was the government that tried to dissuade the district court from upwardly departing under § 5K2.0. The government argued that the Guidelines had already taken Almaguer's conduct into account and therefore it was not an appropriate basis for a departure. The district court rejected the government's argument and sentenced Almaguer to 51 months. On appeal, Almaguer attacks only the district court's decision to upwardly depart under § 5K2.0. He has adopted the government's argument from below, so the government is in the awkward position of arguing on appeal that the district court was correct for doing what the government itself had below argued the court could not do.

## II. Analysis

On appeal, this court must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). We review the district court's decision for an abuse of discretion. "A district court's decision to depart from the guidelines ... will in most cases be due substantial deference, for it embodies the

traditional exercise of discretion by a sentencing court." *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996); *United States v. Carter*, 122 F.3d 469, 472 (7th Cir.1997) (citing *Koon*). Of course, where the district court misapprehends the law, it has "by definition" abused its discretion. *Koon*, 116 S.Ct. at 2047. When deciding whether to depart from the Guidelines, the district court may have to make findings of fact. These will be accepted on appeal unless we conclude they are clearly erroneous. *Carter*, 122 F.3d at 472.

The district court sentenced Almaguer under the 1995 version of the Guidelines. The relevant portions of the 1997 Guidelines are identical, so the result we reach today would be the same under both versions. The Guideline for a felon in possession is U.S.S.G. § 2K2.1. Subsection (a)(4)(A) of that Guideline set Almaguer's base offense level at 20 because he had possessed the firearm when he "had one prior felony conviction of either a crime of violence or a controlled substance offense." None of the specific offense characteristics outlined in § 2K2.1(b) applied to Almaguer, so under this Guideline his offense level remained 20. This Guideline also contains a cross-reference, which provides:

> If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense ... apply–
>
> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, *if the resulting offense level is greater than that determined above*; or
>
> (B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

U.S.S.G. § 2K2.1(c)(1) (emphasis supplied). Fortunately Almaguer did not kill Luis when he brandished the gun; thus U.S.S.G. § 2X1.1 is the appropriate starting point under this cross-reference. But that Guideline requires reference to other substantive Guidelines:

> (a) Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

None of the specific offense characteristics covered in § 2X1.1(b) apply to Almaguer, so his offense level under § 2X1.1 would be determined solely by the Guideline covering the substantive offense of brandishing the gun.

Both parties agree that Almaguer's brandishing the gun in front of Luis was an aggravated assault, which is covered by U.S.S.G § 2A2.2. The base offense level under this Guideline is 15. One of the specific offense characteristics applies to Almaguer: "if a dangerous weapon (including a firearm) was brandished or its use was threatened, increase by 3 levels." U.S.S.G. § 2A2.2(b)(2)(C). Adding 3 levels to 15 would result in an offense level of 18, so because this level is lower than Almaguer's level under the felon in possession Guideline, which was 20, the district court should have applied the felon in possession Guideline's offense level, which it in fact did. But the court did not stop there.

The district court departed upward by three more offense levels under U.S.S.G. § 5K2.0, which is a policy statement that incorporates 18 U.S.C. § 3553(b). That statutory provision permits a district court to sentence outside the Guidelines range if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. ..." The district court reasoned that Almaguer's brandishing a gun in front of young Luis was an "aggravating behavior" that warranted a three-level upward departure.

The fundamental requirement of a § 5K2.0 departure is that the circumstance at issue has not been taken into account or is of a "degree" not adequately taken into account in the Guidelines. *See Koon*, 116 S.Ct. at 2046 ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of the cases in the Guideline."); *see also*

*United States v. Meza*, 127 F.3d 545, 549 (7th Cir.1996) (the first step in evaluating whether to depart from the Guidelines is "whether an aspect of the case potentially removes it from the Guidelines' 'heartland' and makes it a special, or unusual, case") (quoting *Koon*); *Carter*, 122 F.3d at 473. Because this analysis involves comparing the defendant's circumstances to the circumstances in a usual— or "heartland"—case, the district court is in a better position than this court to make that determination. *Koon*, 116 S.Ct. at 2047 (noting that the vast majority of sentences under the Guidelines are never the subject of an appeal).

■ The Guidelines do not purport to set forth a comprehensive list of factors that might justify an upward or downward departure, but rather set out different examples of factors as guidance. A factor can be one of four kinds: prohibited factors, encouraged factors, discouraged factors, and factors that the Guidelines do not mention. *See id.* at 2045. Here, the district court relied on the policy statement of U.S.S.G. § 5K2.6, which sets out an encouraged factor. It provides:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

But "[e]ven an encouraged factor is not always an appropriate basis for a departure, for on some occasions the applicable Guideline will have taken the factor into account." *Koon*, 116 S.Ct. at 2045. This is such an occasion. Any felon convicted of unlawfully possessing a firearm must, by definition, have possessed "a weapon or dangerous instrumentality" in the commission of the offense. Where the Guidelines must have taken conduct into account in formulating a Guideline, such conduct may be the basis of an enhancement only where it " 'is present to a degree substantially in excess of that which ordinarily is involved in the offense.' " *Koon*,

116 S.Ct. at 2045 (quoting U.S.S.G. § 5K2.0); *United States v. Furkin*, 119 F.3d 1276, 1284 (7th Cir.1997) (court may depart upward where conduct is taken into consideration by Guidelines but in light of unusual circumstances level attached to conduct by Guidelines is inadequate); compare *United States v. Gonzalez–Portillo*, 121 F.3d 1122, 1125 (7th Cir.1997) (status as deportable alien not proper basis where Guideline for offense in question must have taken this status into consideration). We are unsure how a prior felon like Almaguer could "possess" a weapon to a degree substantially in excess of that which is normally necessary to convict one for being a felon in possession, and the district court certainly made no such finding here.

Even if one considers, as the district court did, not just that Almaguer possessed a gun but that he assaulted Luis with it and threatened him, that conduct too has been fully taken into account by § 2K1.1(c)'s incorporation of the Guideline for aggravated assault. The district court made no finding that the aggravated assault of Luis in this case was so unusual either in kind or degree that it takes this case out of the "heartland" of aggravated assaults covered by § 2A2.2. Because the district court failed to make this necessary initial finding, it abused its discretion by departing upward under § 5K2.0. As shown above, aggravated assault had a base offense level of 15 plus an increase of three levels when a dangerous weapon was brandished, resulting in an offense level of 18. Even with the finding that this was a very unusual case meriting a three-level upward departure, the level would only rise to 21. Recall that Almaguer received a three-level reduction for acceptance of responsibility, so the level would still go back to 18. As it stands, the base level for felon in possession of 20 drops back to 17 when the reduction for acceptance of responsibility is applied. Thus, Almaguer's sentence must be vacated and the case remanded for resentencing.

Before concluding, we address two further issues raised by the government on appeal. The government suggests the district court could have applied the vulnerable victim enhancement under U.S.S.G. § 3A1.1 because

of Luis' youth. Of course, "could have" is the operative language here. The district court did not make a finding that the vulnerable victim enhancement was appropriate and the government points to no authority supporting the proposition that this court could affirm the district court's upward departure based on a finding the district court might have made but did not. Moreover, even if the district court had found that the § 3A1.1 enhancement applied to Almaguer's aggravated assault of Luis, the two-level enhancement would only lead to an offense level of 20 under the aggravated assault Guideline which would be the same as the level under the felon in possession Guideline. (Indeed, to end up at level 20 and maintain the sentencing range that the district court thought appropriate, it would have to find a way to raise Almaguer's offense level to 23, because of the three-level reduction for acceptance of responsibility.) And the government doesn't even suggest that the district court might have found Luis a vulnerable victim of the offense of Almaguer being a felon in possession, a crime that the presentence report in this case described as being "victimless." So we don't see how this argument helps the government's position.

The government also argues that the district court considered the *combination* of the aggravated assault and Luis' youth to be a factor warranting an upward departure. There is some indication that the district court did rely on this combination; the court stated that "[t]his aggravating behavior of brandishing a firearm *at a child* and pulling the trigger of a nonloaded gun is indeed that aggravation which the Court believes requires a three-point enhancement for the brandishing of the weapon...." (Transcript of Sentencing Hearing, p. 14) (emphasis supplied). Again, we don't see how this helps the government's position. The combination of both factors has already been taken into account by the Guidelines: there is a Guideline for aggravated assault and a specific enhancement when the victim's youth made him a particularly vulnerable victim. Because this combination has already been taken into account, to warrant an upward departure in this case, this combination would have to be present to a degree not taken into account by the Guidelines. The district court made no such finding here. Compare *Furkin*, 119 F.3d at 1284 (five-level enhancement for obstruction of justice rather than two was appropriate where district court found defendant's conduct was so extreme it was outside the heartland of obstruction of justice enhancement and was not adequately punished by the usual two-level increase). Moreover, the district court must make two findings to warrant the enhancement under § 3A1.1: 1) the victim was unusually vulnerable to the defendant's crime; and 2) the defendant targeted the victim because of that vulnerability. *United States v. Billingsley*, 115 F.3d 458, 462–63 (7th Cir. 1997) (citing *United States v. Jackson*, 95 F.3d 500, 507 (7th Cir.1996)). We would only review these findings for clear error, *id.* at 462, but on the record before us there is no evidence relating to Luis's vulnerability to aggravated assault—the district court never saw Luis—or that Almaguer targeted Luis for this assault because of that vulnerability. Although this issue is not properly before us, we make these observations because the district court may consider these issues on remand. .

Almaguer's sentence is VACATED, and the case REMANDED to the district court to resentence Almaguer in accord with our opinion.