In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-2569

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN BUNCICH,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:16-cr-00161-JTM-JEM-1 — **James T. Moody**, *Judge.*

_____

ARGUED NOVEMBER 1, 2021 — DECIDED DECEMBER 20, 2021

_____

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant John Buncich served as Sheriff of Lake County, Indiana. As sheriff, he received thousands of dollars from local towing companies. In return, those companies received lucrative towing contracts within the county. A jury convicted Buncich of wire fraud and bribery in 2017, and he was sentenced to 188 months in prison. Following an earlier appeal that vacated three of the six counts of conviction, he was resentenced to 151 months.

Buncich now challenges that decision on three grounds. He argues that the district court erred in its Sentencing Guideline calculation, that the court failed to explain its guideline findings sufficiently and made other procedural errors, and that his sentence was substantively unreasonable. We reject all three arguments and affirm his sentence.

I.   *Facts and Procedural History*

   A.  *The Towing Scheme*

In Lake County, the sheriff maintains a "tow list" that determines which towing companies receive towing assignments when law enforcement must order removal of vehicles from roadways, ordinarily at the expense of the vehicle owners. Buncich served as sheriff from 1995 to 2002, and he was elected to a third four-year term beginning in 2011 and another beginning in 2015. Before taking office again, Buncich put together a list of around twelve towing companies and assigned them to defined geographic territories, some of which were more lucrative than others. Some companies were also assigned to perform tows for specialized police details, such as the gang unit or the narcotics unit, which could be even more profitable than the general geographic towing. As sheriff, Buncich saw a daily report of the gang unit tows, as well as monthly summaries showing how many total tows each company had received.

Throughout Buncich's time in office, at least several towing companies paid him to ensure that they remained on the tow list. Many of those payments were made through Chief of Police Timothy Downs—who reported to Buncich—using campaign fundraiser tickets to facilitate the scheme. Downs delivered fundraiser tickets to towing company owners, who

paid for them by check or cash. Downs would then place all the money—sometimes thousands of dollars—in an envelope and give it to Buncich. Other towing company owners purchased tickets from different police officers or dealt with Buncich directly. And some towing company owners who failed to purchase their full allotments of tickets found that their assigned territories had been reduced.

Our decision in Buncich's first appeal provided a detailed account of specific payments. *United States v. Buncich*, 926 F.3d 361, 364–66 (7th Cir. 2019). For sentencing purposes, two towing company owners' activities are particularly relevant. First, William Szarmach owned CSA Towing. While Buncich was running for sheriff in 2010, Szarmach gave him $500 cash through a mutual friend. Almost immediately after Buncich took office, Szarmach found out that he was on the tow list and believed that his money had been well spent. Szarmach then continued making payments through the ticket-purchasing arrangement because he felt he needed to in order to remain on the list. In addition, after Szarmach paid Buncich $1,000 more in cash, he was assigned to tow for the gang unit. And in October 2014, he paid another $2,500 after Downs said Buncich would take "heavy" tows—which were more lucrative—away from S&S Towing and give them to Szarmach's company. For his most expensive tows, Szarmach kicked back a percentage of the profits to Buncich.

Second, Scott Jurgensen owned Samson Relocation & Towing. He testified that Chief Downs helped him get on the tow list—with Buncich's approval—but that he did not make any payments to get on the list. About five months into Buncich's term, however, Downs approached Jurgensen about purchasing fundraiser tickets. Like Szarmach,

Jurgensen believed he needed to buy tickets if he wanted to stay on the tow list. In June 2015, Jurgensen gave Downs $2,500 cash and asked, "we're good for the year, right?" Downs confirmed that they were and later took the money to Buncich, who agreed that Jurgensen "don't have to worry about nothing."

Both Szarmach and Jurgensen also had other opportunities to expand their towing business. Beginning in April 2016, Buncich assigned an officer to spend three days a week writing tickets and calling for tows in the city of Gary, using only Szarmach's and Jurgensen's companies. A different officer eventually took over and spent five days a week doing the same thing. In addition, Jurgensen expressed interest in New Chicago towing, and Buncich said he would speak to a member of the town council there. Jurgensen testified that he later received all the New Chicago tows. In September 2016, he gave Buncich $7,500 cash for making the arrangements.

The FBI searched Buncich's home and office, as well as Szarmach's two business locations, in November 2016. Agents discovered loose cash along with several used and unused money bands in denominations of $1,000, $2,000, and $5,000 at Buncich's home.

B.  *Trial and Sentencing*

Buncich was convicted of five counts of wire fraud and one count of bribery. *Buncich*, 926 F.3d at 366. Under the Sentencing Guidelines, bribery defendants are subject to increased offense levels if "the value of the payment" or "the

benefit received or to be received in return for the payment" exceeded $6,500. U.S.S.G. § 2C1.1(b)(2).[1]

The probation officer's presentence report used the dates that Szarmach and Jurgensen initially made contributions as the starting points for estimating the benefits they received. Szarmach's first payment to Buncich was made before he took office in January 2011, so his company's 1,384 tows from 2011 to 2016 were included. Jurgensen made contributions as early as 2013, so his company's 789 tows from 2013 to 2016 were included as well. The presentence report used a "conservative" estimate of $50 profit per tow to arrive at a total benefit of $108,650, which resulted in an eight-level increase in the guideline calculation.

Buncich objected to these calculations. He argued that Szarmach's 2010 campaign payment was not made in exchange for any official action. He also claimed that neither Szarmach nor Jurgensen received any benefit at all because their companies' tows did not increase significantly from year to year. Buncich argued that the calculation should be based on the total value of the payments, which was under $40,000 and would result in at most a four-level increase in his offense level.

The district court rejected Buncich's objections and adopted the position of the probation officer, concluding that the appropriate guideline range was 151 to 188 months. The

---

[1] Once the $6,500 threshold is cleared, § 2C1.1(b)(2) instructs the sentencing court to use the table in the theft and fraud guideline, § 2B1.1, to determine the exact offense-level increase required. If the value or benefit is between $95,001 and $150,000, the Guidelines call for an eight-level increase. U.S.S.G. § 2B1.1(b)(1)(E).

court also adopted the factual content of the presentence report as its own findings of fact. Finally, after stating that it had considered the 18 U.S.C. § 3553(a) sentencing factors, the mitigation arguments, the findings of the presentence report, and the applicable Sentencing Guidelines, the court imposed a sentence of 188 months.

C. *First Appeal and Resentencing*

In his first appeal, Buncich challenged his convictions but not his sentence. This court overturned his convictions for the first three wire fraud counts due to insufficient evidence. *Buncich*, 926 F.3d at 366. We affirmed the convictions for the other three counts and remanded to the district court for resentencing. *Id.* at 369.

Before resentencing, the probation officer filed an addendum to the presentence report asserting that the reversal on the first three counts had no effect on the original guideline calculation, so that 151 to 188 months remained the correct range. In response, Buncich submitted another sentencing memorandum. He argued that he should be sentenced to time served followed by home detention due to his age, poor health, and vulnerability to COVID-19. Buncich also argued that the government's proposed sentence would be disparately severe as compared to those of other bribery and public corruption defendants both nationally and in this circuit. Finally, he restated his view that the guideline calculation was improper because the government had failed to show any actual benefit to Szarmach's and Jurgensen's companies.

The district court rejected Buncich's arguments. The court again adopted the position of the probation officer and the factual content of the presentence report, agreeing that the

guideline range was still 151 to 188 months. Reiterating that it had considered the mitigation arguments and all the other factors mentioned during the first sentencing hearing, the court imposed a new sentence of 151 months, the bottom of the guideline range.

II. *Guideline Calculation of Benefits from the Bribes*

On appeal, Buncich argues first that the district court miscalculated the benefit received by the towing companies, resulting in an incorrect guideline range. We review the district court's legal application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Slone*, 990 F.3d 568, 572 (7th Cir. 2021).

As we have explained, "benefit calculations cannot always be precise, and so we accept reasonable estimates based on the information available in the record." *United States v. Anderson*, 517 F.3d 953, 963 (7th Cir. 2008). "To be rejected, a district court's calculation must not only be 'inaccurate but outside the realm of permissible computations.'" *Id.*, quoting *United States v. Peterson-Knox*, 471 F.3d 816, 822 (7th Cir. 2006).

Here, the relevant provision is U.S.S.G. § 2C1.1(b)(2), which requires an offense-level increase if "the value of the payment" or "the benefit received or to be received in return for the payment" exceeded $6,500. The district court agreed with the probation officer's estimate that the benefit received was $108,650—the total number of Szarmach's 2011–16 tows and Jurgensen's 2013–16 tows multiplied by $50 per tow. We find no reversible error in the court's treatment of the issue.

A. *Waiver*

As a preliminary matter, the government argues that Buncich waived any challenge to the guideline calculation

because he failed to raise the issue during his original appeal. As a general rule, a party may not use "the accident of a remand" to make an argument that he could have raised—but did not—in his first appeal. *United States v. Adams*, 746 F.3d 734, 745 (7th Cir. 2014), quoting *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996).

That general rule does not hold true, however, when the opposing party fails to make a waiver argument in the district court and instead responds on the merits. *United States v. Crisp*, 820 F.3d 910, 913 (7th Cir. 2016). The government here did not argue waiver in the district court upon resentencing but instead addressed the merits of Buncich's arguments. In doing so, it "waived any waiver," *United States v. Whitlow*, 740 F.3d 433, 439 (7th Cir. 2014), that might have resulted from Buncich's failure to challenge his sentence in his original appeal. We proceed to the merits.

B. *No Benefit?*

According to Buncich, the district court erred because the towing companies received no benefits for the bribes they paid him. He points out that both Szarmach's and Jurgensen's companies had fewer total tows in 2016—when the scheme ended—than they had in 2012. And while Szarmach's share of the total tows had increased by 2016, Jurgensen's share remained constant. Buncich concludes from these trends that the payments Szarmach and Jurgensen made had no effect on their towing contracts.

The argument is neither realistic nor persuasive. First, both Szarmach and Jurgensen received a benefit in that their payments allowed them to remain on the tow list and to maintain their territories. Both owners testified that they felt they

needed to buy fundraiser tickets if they wanted to stay on the list and keep towing. Their payments also allowed them to expand their towing work or territory on some occasions, including Szarmach's increased heavy towing after the October 2014 payments and both companies' acquisition of the Gary tows in 2016.

Meanwhile, as we recognized in Buncich's first appeal, "towing companies who failed to buy their full allotment of campaign tickets had territory taken away." *Buncich*, 926 F.3d at 367. The vice president of S&S Towing, for example, testified that he did not always purchase tickets and that Szarmach took over some of the heavy towing in his territory. And there were other examples. Based on this evidence, the district court did not err by finding that both Szarmach and Jurgensen received a benefit from the arrangement and by calculating the offense-level increase accordingly.

C. *Timing*

Buncich further argues that the district court's calculation was incorrect because it included tows dating back to 2011. He claims that Jurgensen did not make his first corrupt payment until April 2014, while Szarmach's did not come until October 2014. As a result, Buncich argues, any tows before those dates should not have been included in the total.

This argument is also not persuasive. With respect to Jurgensen, the presentence report concluded based on the evidence that he had "made campaign contributions to secure favorable towing treatment as early as 2013." Szarmach's first payment was even earlier—he gave Buncich $500 before he took office because he thought it would help him get on the tow list. Both men then continued to make payments and

receive benefits after those initial contributions. Looking at this evidence, the district court did not act unreasonably in finding that the companies' later tows were all part of the corrupt scheme. The court therefore calculated the total using 2011 and 2013 as the start dates for Szarmach and Jurgensen, respectively. This view of the evidence was reasonable. It certainly was not "outside the realm of permissible computations." *Anderson*, 517 F.3d at 963, quoting *Peterson-Knox*, 471 F.3d at 822.

Nor do we find reversible error in the district court's reliance on the presentence report for its conclusions on the benefit-received issue. The court announced that it was adopting the position of the probation officer and rejecting defense counsel's objections to the calculation of the benefit. We held that nearly identical language was sufficient in *United States v. Herman*, where the district judge said: "I adopt the positions of the government and the probation officer as set forth in the addendum, and I reject the position of defense counsel." 930 F.3d 872, 874 (7th Cir. 2019). We rejected an argument that the judge needed to provide a more detailed explanation: "Contrary to [defendant's] contention on appeal, this was enough. The court was entitled to adopt the government's version of events, as set forth in the PSR, to explain its ruling on a disputed point that had been thoroughly explored." *Id.*

So too here. The district court could have said more about the defense's specific objections to the findings in the presentence report, but after observing all the witnesses and hearing all the evidence, it did not clearly err by adopting those findings as its own. See *United States v. Blake*, 965 F.3d 554, 559 (7th Cir. 2020) (similarly concluding that district court satisfied requirements of Fed. R. Crim. P. 32(i)(3) when it rejected

defendant's position for "the reasons stated in the government and probation's responses"). The combination of the presentence report, the exploration of the benefit-received issue at the two sentencing hearings, and the district court's resolution in favor of the presentence report's view is sufficient for us to understand both the issue and the district court's resolution of it and to permit meaningful review.

III. *Procedural Arguments*

Buncich's second challenge is that the district court committed procedural errors by improperly presuming that a guideline sentence was reasonable and by failing to address his sentencing disparity evidence. We review these procedural challenges de novo. *United States v. Chavez*, 12 F.4th 716, 733 (7th Cir. 2021).

A. *Improper Presumption?*

Buncich's presumption argument asserts that the veteran district judge failed to appreciate and comply with the most basic principles of federal sentencing that have applied since the Sentencing Guidelines were deemed only advisory in *United States v. Booker*, 543 U.S. 220, 245 (2005), and *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The principal statute governing federal sentencing instructs the district court to "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), quoting 18 U.S.C. § 3553(a). The sentencing court may not treat the Guidelines as mandatory or presume that the guideline range is reasonable. *Gall*, 552 U.S. at 49–50. Instead, the court "must make an individualized assessment based on the facts presented," including consideration of the factors set out in § 3553(a). *Id.* We have said

repeatedly, however, that the court "need not march through 'every factor under § 3553(a) in a checklist manner.'" *United States v. Stephens*, 986 F.3d 1004, 1010 (7th Cir. 2021), quoting *United States v. Barr*, 960 F.3d 906, 914 (7th Cir. 2020).[2]

Buncich asserts that the district court's analysis "focused entirely" on the guideline range and failed to assess the § 3553(a) factors. We read the transcript quite differently. At the resentencing hearing, the district court discussed the reasons for the sentence at some length. First, the court said: "I have fully considered the seriousness of the defendant's criminal conduct in this case; all of the relevant Section 3553(a) sentencing factors including the mitigating and aggravating facts and circumstances." The court also noted that it had considered, among other things,

> all of the letters of support and other exhibits that have been filed in advance of the initial

---

[2] The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed: to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, among other things. *United States v. Beltran-Leon*, 9 F.4th 485, 492 (7th Cir. 2021), citing 18 U.S.C. § 3553(a).

> sentencing hearing and this resentencing hearing; the arguments submitted today at this resentencing hearing; … [t]he applicable advisory sentencing guidelines and the relevant policy statements of the Sentencing Commission; [t]he final statements of the defendant, his lawyer, and the government lawyer; [t]he nature and circumstances of the crimes of conviction; … [t]he defendant's background history and his personal characteristics.

The court went on to discuss more specific factors that it had taken into account. These included the fact that Buncich had "held the highest elected public office in Lake County endowed with staggering powers, which he abused for self-enrichment;" that he "forever tarnished his own reputation and the reputation of Lake County's honest and good public servants;" and that prior to resentencing he had shown "very little or no remorse."

On the other side of the scales, the court weighed Buncich's long career in law enforcement, his community involvement, and his lack of a criminal record. Finally, the court added that it had considered Buncich's physical health and vulnerability to COVID-19 and concluded that the Bureau of Prisons was "perfectly capable of maintaining a safe environment for the defendant." Both Buncich and his attorney agreed that the court had addressed their mitigation arguments and that it had "fully considered everything that's relevant in determining a reasonable and a just sentence."

The court then said that the defense's request for mitigation lacked "a factual foundation of material substance that would warrant a sentence below the applicable guidelines

imprisonment range." Buncich takes issue with this state-
ment, arguing that it reflects an impermissible presumption
of the Guidelines' reasonableness.

We disagree. The district court went on to say that
Buncich's conduct "deserves no less than a guideline sen-
tence, which under the circumstances of this case is not too
harsh. So in the exercise of my discretion, defense counsel's
request for mitigation of the defendant's sentence, that's de-
nied." In other words, the district court calculated a proper
guideline range, as it was required to do, and it considered
the advice from the Sentencing Commission reflected in that
calculated range, as it was also required to do. The judge fully
understood, though, that he could not deflect responsibility
for the sentencing decision to the Commission. He acknowl-
edged that he had the discretion to impose a different sen-
tence and that he was responsible for the ultimate sentence.

Taking into account the many inputs relevant to the deci-
sion, Judge Moody accepted the guidance from the calculated
range and said he was not convinced there were persuasive
reasons to go outside that range. That was entirely appropri-
ate, not a procedural error. See, e.g., *United States v. Rollins*,
544 F.3d 820, 840 (7th Cir. 2008) (finding no improper pre-
sumption where "the judge expressly recognized, 'I have dis-
cretion in this area' and that he was to impose a sentence suf-
ficient but not greater than necessary to comply with the basic
aims of sentencing"). We have not required more. See, e.g.,
*United States v. Armand*, 856 F.3d 1142, 1146 (7th Cir. 2017)
(finding no improper presumption where district court "dis-
cussed [defendant's] history and characteristics, as well as the
need for the sentence imposed to afford adequate deterrence
to criminal conduct, promote respect for the law, and provide

correctional treatment"); *United States v. Allday*, 542 F.3d 571, 573 (7th Cir. 2008) (finding no improper presumption where district court "considered [defendant's] argument for a lower sentence and his particular circumstances" and "recognized that the Guidelines were in no way binding on its decision").

The district court also reiterated its reasons after announcing the sentence of 151 months. The court said that the sentence "reflects the seriousness of the crimes of conviction," "takes into account … the background history and the personal characteristics of the defendant," and "protects the public from further crimes of this type by the defendant." This discussion closely tracks many of the factors laid out in § 3553(a), including "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed" to serve multiple purposes. 18 U.S.C. § 3553(a). The judge's remarks leave us with no doubt that "the sentencing judge understood his obligation to independently decide whether the Guideline sentence achieved the goals of § 3553(a)." *Allday*, 542 F.3d at 574.

B.  *The Disparity Argument*

Buncich's second procedural challenge is based on the district court's terse comment regarding his sentencing disparity argument. Under § 3553(a)(6), the sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The district court here said that it had "fully considered the need to avoid unwarranted sentence disparities among defendants." Buncich contends that statement was insufficient because he had presented evidence that bribery defendants both in this

circuit and nationwide have received more lenient sentences than he did.

The challenge fails for two reasons. First, we have found that a sentence "within a Guideline range 'necessarily' complies with § 3553(a)(6)." *United States v. Sanchez*, 989 F.3d 523, 541 (7th Cir. 2021), quoting *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009); accord, e.g., *United States v. Annoreno*, 713 F.3d 352, 359 (7th Cir. 2013) ("Sentencing within the range advised by the sentencing guidelines accounts for concerns of unwarranted sentencing disparities…."). As the Supreme Court put it, "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall*, 552 U.S. at 54. A district judge who correctly calculates and reviews the guideline range has therefore "*necessarily* [given] significant weight and consideration to the need to avoid unwarranted disparities." *Id.* (emphasis added). That is precisely what the district court did here.

Second, we have recognized that a district court may pass over in silence a defendant's argument that the court failed to consider disparities when imposing a guideline-range sentence. *Sanchez*, 989 F.3d at 541. In such cases, the district court need not say anything at all about § 3553(a)(6). *Id.* Since the guideline calculation in this case was not erroneous, the district court was not required to address Buncich's argument any more specifically than it did.

IV. *Substantive Reasonableness*

Finally, Buncich argues that his sentence was substantively unreasonable. We review that question for an abuse of discretion. *United States v. Gibson*, 996 F.3d 451, 468 (7th Cir.

2021). A reviewing court may presume that a sentence within the properly calculated guideline range is reasonable. *United States v. Beltran-Leon*, 9 F.4th 485, 491 (7th Cir. 2021).

Buncich has not overcome that presumption here. He argues that the district court dismissed his mitigation evidence without discussion, focusing solely on the seriousness of the offense. Again, we read the sentencing transcript differently. The district court said that it had reviewed the presentence report and both parties' submissions, "which is often enough to show that it considered the mitigation arguments." *Stephens*, 986 F.3d at 1009. The court acknowledged that there were mitigating factors, such as Buncich's community involvement and lack of a criminal record. But the court understandably placed greater weight on the aggravating factors in these bribery convictions of the highest-ranking law enforcement officer in the county. That much is clear from the court's reference, for example, to Buncich's "egregious self-serving betrayal of the trust placed in him as sheriff" and to his abuse of his "staggering powers" for his own enrichment that had "forever tarnished his own reputation and the reputation of Lake County's honest and good public servants." Judge Moody knows Lake County as well as anyone. He was entitled to make that judgment focusing primarily on the seriousness of Buncich's offenses and the need for general deterrence in the larger community. The sentence here was not unreasonable.

AFFIRMED.

ST. EVE, *Circuit Judge*, concurring in part and dissenting in part. I largely agree with the majority. The district court did not improperly presume that a guideline sentence was reasonable; did not fail to address a nonfrivolous disparity argument; and did not impose a substantively unreasonable sentence. I part ways only on the question of whether the district court, based on the record before it, appropriately calculated the "benefit received" by the tow companies.[1]

Section 2C1.1(b) of the Guidelines provides that a defendant's sentence can be increased based on the "benefit received" by the briber for the corrupt act. U.S.S.G. § 2C1.1(b). Under this provision, the greater the benefit a briber receives, the heavier the sentence is for the person bribed. *See id.* The "benefit received" includes though only the profits (or net revenue) that result from the corruption, not the gross revenue. *See, e.g., United States v. Sapoznik*, 161 F.3d 1117, 1119 (7th Cir. 1998); *United States v. White Eagle*, 721 F.3d 1108, 1121–22 (9th Cir. 2013); *see also United States v. Anderson*, 517 F.3d 953, 962 (7th Cir. 2008) ("[T]he value of the bribe is not always the sum offered by the defendant."). A benefit calculation can be based on uncharged conduct, provided that the district court "explain[s] exactly how the conduct factors into the benefit calculus." *Anderson*, 517 F.3d at 963. We have acknowledged that benefit calculations are not always easy to tabulate, so we "accept *reasonable* estimates based on the information available in the record." *Id.* at 963 (emphasis added). Permitting

---

[1] The majority concludes, and I agree, that the government waived its waiver argument for the scope of remand by not raising the issue below. *See United States v. Whitlow*, 740 F.3d 433, 439 (7th Cir. 2014).

"reasonable estimates," however, does not mean accepting any number put forth.

Here, as the majority correctly notes, the towing companies received *some* benefit in exchange for the bribes paid to Buncich. The amount of that benefit though turns on the appropriate number of tows that should be included in calculating the "benefit received" and the timing of the bribes. The majority believes that the "benefit received" by the tow companies could fairly be all the tows awarded (multiplied by a profit of $50) to Szarmach's company beginning in 2011 and to Jurgensen's company beginning in 2013. That may be true, but the district court has not yet made the necessary factual findings to justify those conclusions.

On the number of tows, merely giving some benefit to the two companies, even in exchange for bribes, does not signify that *every* tow resulted from the illegal payments. I do not dispute that Szarmach's towing company was awarded more tows and that Jurgensen's towing company maintained its position as other companies lost out. But the benefit calculation relied on by the district court presupposes that both companies would have lost *all* their territory without paying the bribe money. That goes too far on this record alone. As the government acknowledges, no company was ever removed from the towing list. Companies that did not pay, indeed, saw their territory shrink. No attempt, however, is made to quantify the loss that a non-bribing company experienced. Causation can be loose, just not so attenuated that it lacks factual support. *See id.* at 963 (rejecting the government's million-dollar figure because the only properties "*affected* by illegal bribes" count (emphasis added)); *Sapoznik*, 161 F.3d at 1120

("But in this case there is not enough evidence to permit even an approximation. There is no evidence at all.").

On the timing of the bribes, the government seeks to punish Buncich for uncharged criminal conduct dating back almost three years before the first charged bribe. The jury convicted Buncich on three counts relevant here, with the earliest corrupt payment made to Jurgensen in April 2014 and to Szarmach in October 2014. The calculation ultimately adopted by the district court, however, included tows from alleged bribery beginning in 2011 without any supporting factual findings going back that far in time.

Given the lack of factual findings to support the "benefit received" by the bribers, I would respectfully remand for re-sentencing.