In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2780

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARTEL SETTLES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:20-cr-101 — **Damon R. Leichty**, *Judge.*

ARGUED JUNE 1, 2022 — DECIDED AUGUST 9, 2022

Before EASTERBROOK, WOOD, and SCUDDER, *Circuit Judges.*

WOOD, *Circuit Judge.* This appeal concerns the sentence Martel Settles received for being a felon in possession of a firearm. After he pleaded guilty, the district court sentenced him to 87 months in prison. That was well above the advisory guidelines range of 33–41 months, but the district court thought that the dangerousness of his conduct and his extensive criminal history warranted a stiffer sentence.

Settles now challenges the procedures the district court used in arriving at that sentence—in particular, the court's effort to attribute additional "offense levels" corresponding to the factors identified in 18 U.S.C. § 3553(a), and through that method determining what the guidelines would advise for someone with Settles's characteristics. This, we think, was more arbitrary than the court may have realized, and we do not recommend this approach. Nonetheless, the court also explained its sentence with a more traditional application of section 3553(a). Any error in methodology was thus harmless, and so we affirm the sentence.

# I

## A

In the early morning of April 4, 2020, Settles arrived at the South Bend, Indiana house where his ex-girlfriend, Danielle Platz, and their child lived. As Settles banged on the door and demanded to be let inside, Platz saw that Settles had a gun in his hand and notified the police. State troopers arrived and detained Settles, though he was briefly able to escape on foot before being caught again a few houses away. Settles previously had been convicted of a felony offense, and so his possession of a firearm that morning violated 18 U.S.C. § 922(g)(1). Later that month he pleaded guilty without a plea agreement.

## B

Before the sentencing hearing, the U.S. Probation Office prepared a presentence investigation report (PSR); it calculated Settles's advisory sentence under the federal guidelines based on an offense level of 18 and a criminal-history category of III, for a range of 33–41 months' incarceration. Specifically,

the PSR fixed Settles's base offense level at 20 in light of his 2009 conviction for robbery resulting in bodily injury. See U.S.S.G. § 2K2.1(a)(4)(A). It then subtracted two levels for acceptance of responsibility. See U.S.S.G. § 3E1.1(a). Finally, it assessed six criminal-history points for various past offenses, placing him in criminal-history category III. See U.S.S.G. chap. 5A.

The district court began the sentencing proceedings by announcing that it was adopting the PSR's calculations, including the recommended sentencing range of 33 to 41 months. Accurately stating that this range was just a starting point, the court then traced Settles's case through the 18 U.S.C. § 3553(a) factors. Settles's crime was more serious than a typical instance of felonious weapon possession, the court explained, because Settles "was arrested after arriving at his ex-girlfriend's home, where a child was sleeping, in violation of a no contact order, in the middle of the night, with a loaded handgun, and with a live round in the chamber." The court next surveyed Settles's history of violent conduct, including prior threatening actions against ex-romantic partners. It noted that four orders of protection had been entered against him at the request of two ex-romantic partners; two of those orders were still in force at the time of sentencing. The court also pointed out that Settles had robbed and assaulted a woman in 2009, spit on a woman in 2018, and slapped and spit on his former girlfriend in 2019. This history, it concluded, demonstrated that Settles had a high risk of recidivism. The violent and misogynistic nature of his behavior caused the court to characterize the recommended guideline range as "strikingly low."

It would have been enough for the court to stop there, but it decided to do more. It described its additional analysis as a

"mathematical" or "metrical check-and-balance" process. It started by referring to the guideline enhancement calling for a two-level increase if a defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing." U.S.S.G. § 3C1.2. Settles's run from the officers, the court admitted, "d[idn]'t satisfy that definition," but it nonetheless struck the court as serious enough to justify the "equivalent" of a one-level higher offense score. The district court continued along this path, attributing one- or two-level offense-level increases to different aspects of the case. Thus, it concluded that Settles's previous violations of protective orders merited the equivalent of a two-level increase; the risk of recidivism justified the equivalent of one more level; and the seriousness of the offense called for another still. The court explained that, in assessing the seriousness of the offense, it took "some guidance" from section 5K2.6 of the guidelines, a policy statement describing how a court may increase a sentence above the authorized guideline range "[i]f a weapon or dangerous instrumentality was used or possessed in the commission of the offense." U.S.S.G. § 5K2.6.

The court thought that its "adjustments" taken together supported the equivalent of a five-level increase to Settles's offense level (*i.e.*, from 18 to 23), as well as a move from criminal-history category III to IV. Turning back to the guidelines's Sentencing Table, one sees that an offense level of 23 and a criminal history of IV call for a range of 70–87 months. The court then seemed to settle on this as the actual sentencing range (despite its earlier statement that it was adopting the lower range from the PSR). It imposed a sentence of 87 months, the upper limit of the notional range it had created. That sentence is less than the statutory maximum of ten years

(120 months) requested by the government. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). The court capped off its explanation by returning to the section 3553(a) factors and stating that it regarded 87 months as a "right and reasonable" sentence for Settles, and that it also took comfort from the fact that 87 months accorded with its "mathematical check and balance."

## II

On appeal, Settles objects to the district court's methodology of attributing new offense levels to each section 3553(a) factor and using the new total to reach an above-guidelines sentence, even though the actual guidelines did not support the use of these enhancements. He also argues that the court's reasoning was marred by three more procedural flaws: (1) the court's reliance on the section 5K2.6 policy statement was misplaced because that statement does not by its terms apply to section 922(g) offenses; (2) the court double-counted criminal history; and (3) it relied on inaccurate information regarding the status of outstanding warrants.

While we review the substantive reasonableness of a sentence for an abuse of discretion, these questions all pertain to the procedural soundness of the court's approach and are therefore examined *de novo*. See *United States v. Buncich*, 20 F.4th 1167, 1174 (7th Cir. 2021); *United States v. Pankow*, 884 F.3d 785, 793 ("Some examples of significant procedural error are failure to calculate correctly the guidelines range, to consider the § 3553(a) factors, or to explain adequately the chosen sentence.").

## A

We first consider whether the district court's "mathematical check and balance" approach to justifying an above-

guidelines sentence diverged from proper sentencing proce-
dure. Since *United States v. Booker*, 543 U.S. 220 (2005), the Su-
preme Court has clarified the process by which courts should
arrive at a sentence that is sufficient, but not greater than nec-
essary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).
"First, a district court should begin all sentencing proceedings
by correctly calculating the applicable Guidelines range."
*Peugh v. United States*, 569 U.S. 530, 536 (2013). Second, it
"must … consider the arguments of the parties and the factors
set forth in § 3553(a)." *Id.* Third, if the court "decides that an
outside-guidelines sentence is warranted, [it] must consider
the extent of the deviation and ensure that the justification is
sufficiently compelling to support the degree of the variance."
*Gall v. United States*, 552 U.S. 38, 50 (2007). And fourth, "[a]fter
settling on the appropriate sentence, [the district court] must
adequately explain the chosen sentence to allow for meaning-
ful appellate review and to promote the perception of fair sen-
tencing." *Id.*

The district court introduced its "mathematical check and
balance" at the third stage, attributing to each section 3553(a)
factor a certain number of offense levels and moving up the
Sentencing Table accordingly. It may have drawn this ap-
proach from *United States v. Jones*, where we pointed out that
there are two ways to gauge the magnitude of a district
court's deviation from the guidelines: "(1) calculate the per-
centage deviation from the top of the Guidelines range to the
ultimate sentence; or (2) increase the number of offense levels
until arriving at an appropriate Guidelines range." 962 F.3d
956, 962 (7th Cir. 2020); see *United States v. Ballard*, 950 F.3d
434, 437–38 (7th Cir. 2020) (same). The magnitude of deviation
is important because, as we just noted, district courts have the
obligation to ensure that their "justification is sufficiently

compelling to support the degree of the variance." See *Gall*, 552 U.S. at 50. That said, once the case reaches the court of appeals, the sentence is reviewed first for procedural regularity and then only for substantive reasonableness. *Id.* at 51. And because the Sentencing Table's ranges cover ever-greater numbers of months, translating a deviation into its offense-level equivalent can help contextualize just how far a district court strayed from the guidelines.

But counting offense levels *after* a sentence is reached *to confirm* its reasonableness, as we suggested in *Jones*, is different from stacking enhancements and their attending offense levels *to arrive* at the sentence. The latter approach is flawed because, by definition, the district court is using enhancements that do not formally apply. In addition, it comes dangerously close to formal departure analysis, by tempting district courts to expand the applicability of enhancements and to stray from the more holistic analysis required by section 3553(a). We do not mean to criticize the practice of taking guidance from policy statements when comparing a defendant's conduct to other possible instances of the offense. See *United States v. Pankow*, 884 F.3d 785, 793 (7th Cir. 2018); *United States v. Brown*, 732 F.3d 781, 786 (7th Cir. 2013). But that guidance must be assessed alongside the other section 3553(a) factors, rather than treated as a sufficient explanation by itself.

With this in mind, we are troubled by certain aspects of the district court's approach. It first mentions the 70–87 month range and the ultimate sentence of 87 months at the very end of what it called its "mathematical check and balance" process. This is concerning because it suggests that the "mathematical" process was not a retrospective "check."

If this were all we had, we would seriously consider a remand. But it is not. When all was said and done, the court also delivered an oral statement and filed a post-sentencing memorandum, each of which describes why 87 months was "right and reasonable" in light of "all the factors under 3553(a)." Those explanations reassure us that the court reviewed the case and ultimate sentence as an integrated whole, rather than deriving the sentence from an incorrect guidelines range. Our concerns are further allayed by the fact that the court tailored the guidance given in U.S.S.G. §§ 3C1.2 and 5K2.6 to the particular facts. It recognized that Settles's flight did not warrant a two-level enhancement, as is suggested by section 3C1.2, but thought that it still merited the equivalent of one level. The court was thus not mechanically following enhancements in a paint-by-numbers manner. Though district courts should be cautious when using similar "metrical checks" in the future, in this case any error that may have existed was harmless.

## B

In addition to his challenge to the district court's methodology, Settles raises three specific claims. The first is that the court committed legal error by appealing to the section 5K2.6 policy statement when determining the seriousness of his offense, because that statement does not apply to section 922(g) possession offenses. Section 5K2.6 reads as follows:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its

use endangered others. The discharge of a fire-
arm might warrant a substantial sentence in-
crease.

In its oral statement, the district court referred to section 5K2.6
after running through the section 3553(a) analysis and its
"mathematical check and balance":

> In assessing the seriousness of this offense, I
> would note that the guidelines also provide
> some guidance to the treatment of weapons or
> dangerous instrumentalities. And the guidance,
> at least as given to me by the guideline, says that
> the extent of the increase ordinarily should de-
> pend on the dangerousness of the weapon, the
> manner in which it was used, and the extent to
> which its use endangered others. And I have in
> my comments taken that into account under
> 5K2.6 just as policy guidance from the guide-
> lines within the means of 3553(a).

Sentencing Transcript at 43.

Because all section 922(g) possession cases will satisfy sec-
tion 5K2.6's conditional clause, Settles argues that the author-
ized guideline range already incorporates the various consid-
erations reflected in section 5K2.6. He thus reasons that the
policy statement does not justify an upward variation for a
section 922(g) offense. To make this point, Settles draws upon
*United States v. Almaguer*, 146 F.3d 474 (7th Cir. 1998), a pre-
*Booker* case concerning the interplay between section 922(g)
and section 5K2.6. There we doubted whether "a prior felon
… could 'possess' a weapon to a degree substantially in excess

of that which is normally necessary to convict one for being a felon in possession." *Id.* at 477.

But in *Almaguer*, the sentencing court had accounted for the dangerousness of the use of the weapon when applying the separate guideline enhancement for aggravated assault, and only for *that* reason did we find the application of section 5K2.6 to be redundant. See *id.* at 477–478. Even in the pre-*Booker* world in which *Almaguer* arose, the authorized section 922(g) guideline range may not have incorporated the complete set of possession offenses in a manner necessarily foreclosing all upward departures based on section 5K2.6. Consider the difference between a gun locked in one's home and a gun loaded on another's doorstep—cases that vary dramatically along the three dimensions described in section 5K2.6.

In any event, the question whether the authorized guideline range fully incorporates section 5K2.6 has much less purchase in the post-*Booker* world, where statements lack independent legal effect but can still guide a sentencing court's section 3553(a) analysis. See *United States v. Loving*, 22 F.4th 630, 635–36 (7th Cir. 2022). As part of its determination that there is a sufficiently compelling justification for an outside-guidelines sentence, the district court must "adequately explain the chosen sentence." *Gall*, 552 U.S. at 50. Analogies to policy statements provide "just one way" to meet this requirement. *United States v. Brown*, 732 F.3d 781, 786 (7th Cir. 2013). And in any event, the analogy was just a small piece of the court's exploration of the relative seriousness of Settles's conduct, and so we see no error.

Settles next argues that the district court double-counted his criminal history. This is because the court added a criminal-history point pursuant to section 4A1.3 of the

guidelines—moving him from III to IV—*and* it added the equivalent of one offense level for criminal history in its "mathematical check and balance." But as the government observes, the court gave a different explanation for its use of criminal history in these two situations. The court tied the additional criminal-history point to a disorderly-conduct conviction that had been dismissed while this case was pending. By contrast, the court justified the offense-level increase as follows: "[Y]our plain stubbornness, your determination, your persistence to continue with crime, to associate unlawfully with firearms, that too struck me as a federal goal that had not yet been fully accounted for by the guidelines." These observations account for the *regularity* and *quality* of criminal conduct—aspects different from the sheer number of convictions on which the criminal-history score depends. *Cf. United States v. Hayden*, 775 F.3d 847, 850 (7th Cir. 2014) ("While some of this [criminal history] already was accounted for in the guidelines calculation, that did not bar the sentencing court from weighing the information differently than the Sentencing Commission."). Because the court did not mistakenly or without justification count the same aspect of criminal history twice, its approach was sound.

Third and finally, Settles argues that the district court relied on inaccurate information about the status of some outstanding warrants when it evaluated the risk of recidivism. The court stated at sentencing and then in its post-sentencing memorandum that Settles "has active warrants," even though he had pleaded guilty before the hearing to resolve one warrant and all other warrants had been dismissed.

Because Settles did not object to the court's statement at the sentencing hearing, to obtain resentencing he must

establish plain error. That requires him to show (among other things) that he "was prejudiced by this misstatement, *i.e.*, that there is a reasonable probability that, but for this error, his sentence would have been different." *United States v. Miller*, 900 F.3d 509, 512 (7th Cir. 2018); see *United States v. Feterick*, 872 F.3d 822, 824 (7th Cir. 2017) (remanding for reassessment of a drug-treatment condition on plain-error review after the district court "misstated [defendant's] history of cocaine use and relied on that misunderstanding to justify the drug treatment condition"). But the references to "active warrants" were in passing and within a broader survey of Settles's criminal history. We see no reason to believe that the court's sentence was meaningfully swayed by its impression of the warrants' current status. Moreover, the fact that Settles pleaded guilty to resolve one of the warrants has some bearing on recidivism risk. We therefore do not find prejudice from this minor error.

*             *             *

We AFFIRM the judgment of the district court.